Argued and submitted June 18, reversed and remanded December 15, 1999

# NORTH CLACKAMAS SCHOOL DISTRICT NO. 12,
*Respondent,*

*v.*

# OREGON SCHOOL BOARDS ASSOCIATION PROPERTY AND CASUALTY TRUST,
an Oregon nonprofit corporation,
*Appellant.*

(97-01-195; CA A101143)

991 P2d 1089

Peter R. Mersereau argued the cause for appellant. On the briefs were Thomas W. McPherson and Mersereau & Shannon, LLP.

R. Kenney Roberts argued the cause for respondent. On the brief was Craig A. Staples.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

HASELTON, J.

**HASELTON, J.**

Defendant insurer appeals from a judgment in favor of plaintiff insured in an action for breach of an insurance contract. The trial court, after a trial to the court, determined that plaintiff was entitled to coverage under the policy's "wrongful act" coverage, which carried a lower deductible amount, and not its "occurrence" coverage, which carried a higher deductible. We reverse.

In July 1993, defendant, Oregon School Boards Association Property and Casualty Trust (OSBA) issued a "School District Package Policy" to plaintiff, North Clackamas School District No. 12 (the District). The policy provided, in pertinent part:

> "Subject to the limits of liability, [OSBA] agrees to pay on behalf of an **Insured** all sums which an **Insured** shall become legally obligated to pay as **damages;**
>
> "a. because of **bodily injury** or **property damage** to which this insurance applies caused by an **occurrence**, or
>
> "b. Insofar as coverage is not afforded by a. above, resulting from a **wrongful act** committed by an **Insured.**
>
> "\* \* \* \* \*
>
> "C. DEFINITIONS
>
> "\* \* \* \* \*
>
> "(5) **Occurrence** *means an accident*, including continuous or repeated exposure to conditions which, during the policy period, results in injury or damage to which this insurance applies; provided, such injury or damage is neither expected nor intended from the standpoint of the **Insured.**
>
> "\* \* \* \* \*
>
> "(a) **Wrongful Act** means an error or omission, a breach of duty, or a misstatement or misleading statement which results in injury or damage during the policy period."

(Boldface emphasis in original; italicized emphasis added.)

Thus, the policy's coverage distinguished between claims resulting from "occurrences" and claims resulting

from "wrongful acts" not otherwise falling within the "occurrence" coverage. Further—and, as a practical matter that is central to this dispute—the policy specified different "self-insured retentions," or deductible amounts, for the different coverages. Coverage for claims within subsection a, the "occurrence" provision, carried a $50,000 deductible, but coverage for claims within the "wrongful act" provision, subsection b, was subject to a $5,000 deductible.

In 1995, while the policy was in effect, a student ("child") brought a civil action for damages against the District and Baer, a former teacher, alleging that Baer had sexually abused him while Baer was employed by the District. That complaint alleged that the District was *directly* liable[1] for child's injuries because the District had been negligent:

"A. In failing to adopt and administer adequate procedures to protect District's students from sexual abuse by District's employees;

"B. In failing to adequately screen employees prior to hire.

"C. In failing to adequately evaluate and investigate factual indications and reports which suggested that defendant Baer was a pedophile and engaged in acts of sexual abuse of minors.

"D. In failing to adequately monitor and supervise defendant Baer.

"E. In failing to adequately train supervisory staff members in recognizing and evaluating potential or actual pedophiles.

"F. In failing to use reasonable care to protect plaintiff from sexual abuse by District's personnel."

The District tendered defense of child's claims. The District took the position that child's claims fell within the "wrongful act" coverage and were subject to the $5,000 deductible. OSBA responded that child's claims fell within the "occurrence" coverage and were, thus, subject to the $50,000 deductible. Ultimately, the District settled child's

---

[1] The complaint did not allege that the district was *vicariously* liable for Baer's conduct. *Cf. Fearing v. Bucher*, 328 Or 367, 977 P2d 1163 (1999); *Lourim v. Swensen*, 328 Or 380, 977 P2d 1157 (1999) (both addressing vicarious liability for agent's sexual misconduct).

claims for $40,000, after incurring defense costs of more than $10,000.

The District then filed this action for breach of contract against OSBA,[2] alleging that OSBA had "failed * * * to provide defense and liability coverage" of child's claims under the "wrongful act" coverage and that, because of that failure, the District had been "damaged * * * in the amount of $45,000" (the difference between the $50,000 deductible and the $5,000 deductible). OSBA answered, asserting as an "affirmative defense":

> "The claims in the [underlying] lawsuit arose out of alleged 'bodily injuries' caused by an 'occurrence' as those terms are defined in the underl[ying OSBA] policy. As a result, under the provisions set forth in the policy's Insuring Agreement, the provisions regarding Wrongful Acts coverage were never implicated. Instead, the $50,000 deductible applicable to bodily injury/property damage coverage was implicated, thereby requiring plaintiff to fund the aforesaid settlement."

Following a trial to the court on the coverage dispute, the court issued a letter opinion that stated:

> "On the one hand, respondent argues that this is simply a routine 'occurrence' claim, much like playground supervision cases which, according to respondent, are always considered 'occurrence' losses by those affected.
>
> "On the other hand, common sense and Justice Holman tells us it is ones' ordinary understanding of 'accident' that should matter in these cases. *Botts v. Hartford Acc. & Indem. Co.,* 284 Or 95, [101, 585 P2d 657] (1978). Only a lawyer, in my view, could argue with a straight face that failing to screen for sexually predatory employees is somehow an 'accidental' event.
>
> "I have concluded that the language of the questioned policy, as applied to claims against plaintiff, is, at best confusing and ambiguous.

---

[2] The original complaint named both OSBA and Coregis Insurance Company, the excess carrier, as defendants. Before trial, the parties stipulated to the dismissal of Coregis.

"Accordingly, the Court finds for the plaintiff. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464[, 469-70, 836 P2d 703] (1992)."

The court consequently entered judgment for the District.

■ On appeal, OSBA asserts two interrelated assignments of error. *First,* OSBA asserts that the trial court erred in concluding that the policy language, and specifically, the term "accident" is ambiguous. *Second,* OSBA asserts that the trial court erred, based on its premise that the policy was ambiguous, in concluding that the "wrongful act" provision, and not the "occurrence" provision, controls.

As the trial court recognized, the resolution of this case turns on the meaning of "accident" in the policy. Obviously, for the "occurrence" coverage to apply there must be an "occurrence." Under the policy, "occurrence" "means an accident." Thus, unless child's injuries resulted from an "accident," there would be no "occurrence" coverage, and the "wrongful act" coverage would apply.

Before addressing the meaning of "accident" under the District's general liability policy, we emphasize that child's claims against the District were based solely on direct, and not vicarious, liability. Thus, the operative conduct—the referent for "accident"—is the District's negligent hiring, retention, training and supervision, and not Baer's (the teacher's) conduct. *Cf. Fearing v. Bucher,* 328 Or 367, 977 P2d 1163 (1999); *Lourim v. Swensen,* 328 Or 380, 977 P2d 1157 (1999) (both holding that vicarious liability claims based on agents' sexual misconduct were legally sufficient).

■ In determining the meaning of "accident" in the District's policy, we adhere to the analysis prescribed in *Hoffman Construction Co. v. Fred S. James & Co.,* 313 Or 464, 469-70, 836 P2d 703 (1992). Interpretation of the policy is a question of law, and our task is " 'to ascertain the intention of the parties.' " *Id.* at 469 (quoting *Totten v. New York Life Ins. Co.,* 298 Or 765, 770, 696 P2d 1082 (1985)). We determine the intention of the parties based on the terms and conditions of the insurance policy. *Id.* If the term at issue is not defined in the policy, then the next step is to look to the plain meaning of the term. *Id.* at 470. If there is more than

one plausible interpretation of the term's plain meaning, then each interpretation must be scrutinized in the light of the specific context in which the term is used in the policy and also in the broad context of the policy as a whole. If after scrutiny, both purported interpretations remain reasonable, then the rule of interpretation against the drafter applies. *Id.* at 470-71.

■ In this case, the policy does not define "accident." However, we and the Supreme Court have recently reaffirmed that, in the insurance context, the meaning and determination of "accident" focuses not on conduct, but on result:

> "[T]he question is not whether the conduct that caused the injury was intentional but whether the insured specifically intended to cause the injury that gives rise to coverage." *Minnis v. Oregon Mutual Ins. Co.,* 162 Or App 198, 210, 986 P2d 77 (1999) (construing and applying general commercial liability policy).

*See also Fox v. Country Mutual Ins. Co.,* 327 Or 500, 515, 964 P2d 997 (1998) ("accident" in uninsured and underinsured motorist coverage connotes unintended consequences even of intentional acts).

*Minnis* is analogous. There, we considered, *inter alia,* whether an insurer had a duty to defend an employer against claims that it was vicariously liable for a supervisor's sexual misconduct towards an employee. The insurer's duty to defend depended, in part, on whether the employee's complaint alleged an "occurrence" within the employer's general liability insurance policy. As here, the policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same conditions." 162 Or App at 209. In determining whether the employee's complaint alleged an "accident," we focused on whether the complaint alleged a *specific intent to cause "bodily injury." Id.* at 210-11. Because it did not, we concluded that the complaint, at least arguably, alleged that the employee's bodily injury was accidental and, hence, within the "occurrence" coverage. *Id.* at 211-17.

As in *Minnis*, the meaning of "accident" as used in OSBA's general liability policy is well-established and unambiguous. *See Goodman v. Continental Casualty Co.*, 141 Or App 379, 389, 918 P2d 438, *rev den* 324 Or 305 (1996) ("matter of law" construction of "accidental" injury in prior case controlled in later case). Thus, the question reduces to whether the District, in negligently hiring, supervising, training, and retaining Baer, *intended to cause child injury*. There is no evidence in this record of such an intent to injure—and the District, not surprisingly, does not contend otherwise. Accordingly, child's injuries were the result of an "accident" and, hence, his claims were within the policy's "occurrence" coverage.

Because child's claims were within the "occurrence" coverage, they could not be within the "wrongful act" coverage. The policy's explicit language in defining and limiting the scope of the "wrongful act" coverage—"Insofar as coverage is not afforded by a. above [the 'occurrence' provision,]"— renders the two provisions mutually exclusive. The trial court erred in concluding otherwise.

We note, finally, that our construction of the policy does not—as the District contends—"eviscerate" the "wrongful act" coverage. The "occurrence" coverage applies only where the insured becomes liable for damages "because of *bodily injury* or *property damage*" caused by an occurrence. Conversely, the "wrongful act" coverage is not so limited. Consequently as OSBA explains, the "wrongful act" coverage encompasses myriad statutory and errors-and-omissions-related claims not involving "bodily injury" or "property damage" that fall outside the "occurrence" coverage:

> "[C]ontrary to the District's argument, the errors and omissions coverage in the policy here at issue clearly covers, at least, all claims of disparate impact discrimination, under Title VII or under ORS Chapter 659. * * *

> "[Other statutory claims] include, to name only a few, * * * those arising under the Americans with Disabilities Act, the Oregon Public Meetings Law (ORS 192.610-710), the Oregon Public Records Law (ORS 192.410-595), the Oregon

Election Laws (ORS Chapters 249-260), and all the financing and budgetary statutes and regulations relating to school districts.

"* * * * *

"In addition to such statutory claims, many common law causes of action not resulting in bodily injury or property damage would fall within the error and omission coverage. These include claims for defamation, wrongful denial of tenure, wrongful discharge, negligent educational instruction, and the entire range of Board member liabilities arising out of misfeasance of official duty."

The trial court erred in concluding that child's claims fell within the policy's "wrongful act" coverage, and not the "occurrence" coverage.

Reversed and remanded.