Argued and submitted December 3, 1999, affirmed May 24, 2000

## Dale R. DRAKE
and Bobbe Drake,
husband and wife,
*Appellants,*

*v.*

## MUTUAL OF ENUMCLAW INSURANCE COMPANY,
*Respondent.*

(9807-04876; CA A104098)

1 P3d 1065

Donald A. Greig argued the cause for appellants. With him on the opening brief was Landerholm, Memovich, Lansverk & Whitesides, P.S., Vancouver.

Thomas M. Christ argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

The issue in this case is whether defendant Mutual of Enumclaw Insurance Company had a duty to defend its insureds, Dale and Bobbe Drake, in an action brought against them that included claims for undue influence, breach of fiduciary duty, and interference with economic relations. The trial court entered summary judgment for defendant, concluding that defendant had no duty to defend, because the complaint in the underlying action alleged conduct that was not covered under the insurance policies issued to plaintiffs. We affirm.

In 1996, plaintiffs purchased a homeowner's insurance policy from defendant that included personal liability and property damage coverage. At the same time, defendant also issued to plaintiffs a personal umbrella insurance policy that included personal liability and property damage coverages subject to a liability limit of $1,000,000. In January 1997, while both policies were in effect, Dallene Connell filed an action against plaintiffs in Marion County Circuit Court. Connell is Bobbe's sister. The overarching theme of Connell's complaint, which included eight separate claims, is that plaintiffs caused the sisters' mother, Mary Sullivan, to disinherit Connell in order to obtain a larger share of Sullivan's estate for themselves.

Shortly after being served, plaintiffs tendered the defense of the Connell action to defendant. Defendant rejected the tender and, as a consequence, plaintiffs had to retain counsel at their own expense in the Connell action.[1] In July 1998, plaintiffs initiated this action for a judgment declaring that defendant owes a duty to defend them in the Connell action and that defendant is liable for their defense costs. Defendant moved for summary judgment, arguing that each of Connell's claims alleged only intentional conduct and, therefore, did not allege an "occurrence" under the policies. Defendant also asserted that none of Connell's claims sought relief for a "personal injury" or "property damage," one of which must be alleged for coverage to exist. The trial court

---

[1] The Connell action was still pending at the time this appeal was filed.

granted the summary judgment motion, holding that "defendant owes no duty to defend or indemnify plaintiffs against [the claims of] Dallene Connell * * *."

On appeal, plaintiffs argue that the trial court erred in concluding that defendant had no duty to defend them in the Connell action. The parties' dispute requires interpretation of the insurance policies and sorts into these questions: (1) whether any of Connell's claims alleges an "occurrence" within the meaning of the policies; and (2), if so, whether her complaint either alleges "property damage" or "personal injury" resulting from such an occurrence.

Because the material facts are not in dispute, we review the trial court's grant of summary judgment to determine whether defendant was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Whether an insurer has a duty to defend presents a question of law, which is determined by comparing the terms of the insurance policy with the allegations of the complaint against the insured. *Klamath Pacific Corp. v. Reliance Ins. Co.*, 151 Or App 405, 413, 950 P2d 909 (1997), *on recons* 152 Or App 738, 955 P2d 340 (1998). If the complaint alleges facts that, if proved, would impose liability covered by the policy, the insurer must defend, even if some of the conduct alleged would not be covered. *Ledford v. Gutoski*, 319 Or 397, 400, 877 P2d 80 (1994); *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 645, 576 P2d 1244 (1978).

We first summarize the relevant claims made by Connell against plaintiffs. Plaintiffs argue that three of Connell's claims are covered by the policies. The first claim, entitled "undue influence," alleges that the sisters' parents intended to leave their assets to their daughters in equal shares. As a result, they created revocable living trusts that named the sisters as equal beneficiaries. Connell and her husband were appointed as co-trustees. The Sullivans died within ten months of each other, in 1995 and 1996, with Dempsy Sullivan passing away first. The assets from Dempsy's trust were transferred to Mary's trust on his death. In the months before her death, Mary was in poor health. After Dempsy died, Mary became dependent on plaintiffs,

who "regulated her * * * social, legal, and domestic affairs" and "isolat[ed] her from the outside world." Acting under the "undue influence" of plaintiffs and "guided by [their] judgment and advice," Mary amended the trust to substitute Bobbe as trustee in place of the Connells and deleted Dallene as a beneficiary of the trust. In addition, Mary sold property to plaintiffs for less than its actual worth and gave them gifts worth $474,158. Because of the changes to the trust, Connell received nothing from her parents' trusts, and plaintiffs received all of their assets.

The fourth claim in the Connell complaint is entitled "Breach of Fiduciary Duty * * *." That claim realleged Connell's earlier claims and also alleged that, as trustee, Bobbe owed Connell, as beneficiary, duties of loyalty, good faith and impartiality. Connell alleged that

"96.

"[Bobbe] knew that the intent of her mother and father was that the trusts be administered in such a way so as to share their gifts equally with their children. She breached this duty by unduly influencing her mother to transfer the assets of the Dempsy D. Sullivan Trust to the Mary M. Sullivan Trust and then removing Dallene Connell as a beneficiary of the Mary M. Sullivan Trust.

"97.

"She breached this fiduciary duty by self-dealing, imprudent investing and influencing her mother to make gifts without consideration to Dale Drake and herself.

"98.

"[Bobbe] also breached her duties as a co-trustee of Dempsy D. Sullivan's family trust by obtaining a loan for Dale Drake and herself from that trust.

"99.

"[Bobbe] breached the duty of loyalty to the beneficiaries by making decisions based solely on her personal interest in the trusts. She was a beneficiary of both trusts. She unduly influenced her mother to make decisions to benefit her personally.

"100.

"[Bobbe] breached the duty of impartiality to the beneficiaries by implementing a plan to exclude Dallene Connell from the gifts of their parents and to benefit only herself."

Connell alleged that, as a result of Bobbe's breach, Connell's expected inheritance was reduced and that, as a result of the "interference," Connell suffered emotional distress.

The sixth claim in the Connell complaint, entitled "interference with economic relations," alleged that plaintiffs wrongfully interfered with Connell's expectancy in her mother's estate. Connell alleged that "[Bobbe] substituted herself for Dallene Connell, thereby becoming the sole beneficiary of the trusts and other assets owned by Mary M. Sullivan" and that Bobbe "accomplished this substitution by the use of undue influence over Mary M. Sullivan." Once again, Connell also realleged her earlier claims, sought to recover the economic loss to her expectancy, and alleged that she suffered emotional distress as a result of the "interference."

With the substance of the Connell claims in mind, we turn to the homeowners and umbrella policies issued by defendants. Both policies provide liability coverage, but the parties agree that, if anything, the coverage under the umbrella policy is more generous to plaintiffs. Accordingly, we confine our review to the relevant provisions of the umbrella policy. That policy covers claims for "personal injury" or "property damage" that is caused by an "occurrence." The policy defines those terms as follows:

"12.   **Occurrence** means an accident, which happens anywhere during the policy period, whose effects are neither expected nor intended from the standpoint of any **insured**, [and] which results in:

"a.   **personal injury**; or

"b.   **property damage**.

"\* \* \* \* \*

"13.   **Personal injury** means:

"a.  bodily injury including death, sickness or disease, disability or shock;

"b.  mental anguish or mental injury;

"c.  false arrest, detention or imprisonment, or malicious prosecution;

"d.  libel, slander, or defamation of character;

"e.  invasion of privacy, wrongful entry or eviction; [and]

"f.  bodily injury arising from the use of reasonable force by **you** or at **your** direction if such injury arises for the purpose of protecting persons or property.

"\* \* \* \* \*

"14.  **Property damage** means physical injury to, destruction of, or tangible property." (Boldface in original.)

As the structure of the liability provisions of the policy makes clear, a covered claim may either be based on personal injury or property damage but, in any case, the alleged loss must be the result of an "occurrence." Because Connell's claims must arise from an occurrence within the meaning of the policy, we begin our discussion with that issue.

Under the policy, "occurrence" means "an accident." Although the policy provides that an accident must be "unexpected from the standpoint of any insured," it does not otherwise define the term. Thus, we examine its plain meaning. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-70, 836 P2d 703 (1992). That meaning for insurance policies that use those terms is well established and unambiguous. It does not focus on the intentionality of plaintiffs' conduct but, rather, looks to whether they intended to cause injury to Connell. *North Clackamas School Dist. No. 12 v. OSBA*, 164 Or App 339, 345-46, 991 P2d 1089 (1999). If the injury was intentionally inflicted, it was not the result of an accident and, accordingly, did not arise from an occurrence covered under the policy. *Id.*

The thrust of Connell's claims is that plaintiffs diverted her prospective inheritance to themselves. It is true,

as plaintiffs point out, that Connell's complaint does not expressly allege that they intended to harm Connell in carrying out their scheme. Because of that omission, plaintiffs argue that a jury could find, for example, that they unduly influenced Mary but did so without intending to harmfj-Connell. Plaintiffs also note that Connell's claim for breach of fiduciary duty includes an allegation that plaintiffs breached their duty by "imprudent investing." Therefore, plaintiffs reason, that claim is based, in part, on negligent conduct that could not have been aimed at harming Connell. However, we conclude that Connell's complaint did not allege any covered injury arising from an occurrence within the meaning of the policies and, thus, did not trigger defendant's duty to defend.

■    A complaint that does not expressly allege that the insured intended to cause injury may nonetheless compel such an inference by the very gravamen of its allegations. *Nielsen v. St. Paul Companies*, 283 Or 277, 281, 583 P2d 545 (1978). We have applied the rule of inferred intent in claims against an insured for fraud, because "deceit, by its nature, is an act from which an intention to cause harm must necessarily be inferred." *Cunningham & Walsh, Inc. v. Atlantic Mutual Ins.*, 88 Or App 251, 255, 744 P2d 1317 (1987), *rev den* 305 Or 102 (1988).

■    Even as to claims for which an intention to injure need not be inferred solely from the nature of the theory of recovery, the pleading itself may allege facts demonstrating an intention to injure. *Ledford*, 319 Or at 402; *Marleau v. Truck Insurance Exchange*, 155 Or App 147, 155, 963 P2d 715 (1998), *rev allowed* 329 Or 287 (1999). Thus, even if it were theoretically possible to commit the civil wrongs of undue influence, breach of fiduciary duty, and interference with economic relations without intending to injure another person, allegations concerning the manner in which those wrongs were committed by plaintiffs may require the inference that harm was intended. In light of those principles, we consider Connell's claims against plaintiffs.

    The claim for undue influence makes clear that plaintiffs intended to injure Connell. It alleges that plaintiffs "guided" and "advised" Mary so as to cause her to amend her trust to delete Connell and her husband as co-trustees and to

eliminate Connell as a co-equal beneficiary. The same is true of the claim for interference with economic relations. There, Connell alleged that "[Bobbe] substituted herself for Dallene Connell, thereby becoming the sole beneficiary of the trusts and other assets owned by Mary M. Sullivan * * * [Bobbe] accomplished this substitution by the use of undue influence over Mary M. Sullivan."

■     Harm is caused *intentionally* within the meaning of an insurance policy in either of two ways: "[E]ither [because the insured] intended the harm *or engaged in an act so certain to cause the particular kind of harm that the court will say that the insured intended the harm." See Fox v. Country Mutual Ins. Co.*, 327 Or 500, 514, 964 P2d 997 (1998) (citing *Snyder v. Nelson/Leatherby Ins.*, 278 Or 409, 413, 564 P2d 681 (1977)) (emphasis added). As both claims were pleaded, the gain alleged to have been realized by Bobbe could only have been won at Connell's expense. Because there were only two beneficiaries to begin with, plaintiffs engaged in conduct benefitting themselves that was certain to cause the economic harm that Connell alleged and, thus, plaintiffs intended that harm. No other possibility existed in what defendant accurately describes as a "zero-sum inheritance game." Therefore, the economic losses alleged in the claims of undue influence and interference with economic relations did not arise from an "occurrence" triggering defendant's duty to defend under the policy.

■     Our analysis is different with respect to the economic losses alleged in Connell's claim for breach of fiduciary duty. That claim, for the most part, alleges the same wrongdoing pleaded in the other claims, which did not cause an occurrence for reasons already discussed. However, Connell also asserts that plaintiffs breached a duty to her by means of "imprudent investing." We agree with plaintiffs that faulty investing need not be sparked by an intent to harm anyone; in fact, it is most typically the result of negligent conduct. Nothing in the Connell complaint suggests otherwise. Thus, any injury that resulted from the imprudent investing allegation in that claim would be the consequence of an occurrence under the policy. However, in order to be covered, that injury must either constitute property damage or personal injury within the meaning of the policy.

■      The claim for breach of fiduciary duty alleges economic loss in the "amount of [Connell's] lost expectation" and "any loss or depreciation in value of the trust estate or any profit made by [Bobbe]." Plaintiffs do not contend that Connell's economic loss constitutes a "personal injury" within the meaning of the policy. They do, however, assert that the loss of Connell's interest in her mother's estate is "property damage" because it involves "loss of use of tangible property." Plaintiffs are mistaken. The policy does not define the word "tangible," but its plain meaning is beyond dispute. Tangible property has "physical substance apparent to the senses." *Webster's Third New Int'l Dictionary*, 2337 (unabridged ed 1993). Connell did not allege an interest in any tangible property but, instead, has only claimed an expectancy interest in her mother's assets that was diminished as a result of plaintiffs' conduct.

Our decision in *General Ins. v. Western Am. Development*, 43 Or App 671, 603 P2d 1245 (1979), illustrates the distinction. There, the insured's liability policy also defined "property damage" to include "loss of use of tangible property." *Id.* at 674. Persons to whom the insured sold real property sued the insured for misrepresentation based on its failure to disclose the existence of easements that diminished the value of the property. We affirmed the trial court's conclusion that the insurer did not breach its duty to defend the insured against the buyer's claim, because the diminished value of the property did not constitute the "loss of use of tangible property." *Id.* at 675. In precisely the same sense, the extent and value of Connell's prospective inheritance is not an interest in tangible property. Because she did not allege that she has been deprived of the use of any tangible property, Connell's economic losses did not constitute property damage under the policy. Therefore, none of Connell's claimed economic damages arose from a covered event.

The question remains whether Connell's claims for emotional distress damages triggered a duty to defend. Although Connell's undue influence claim only sought recovery for economic losses, the breach of fiduciary duty and interference with economic relations claims also alleged emotional distress damages "resulting from the interference." Plaintiffs argue that Connell's allegations that she suffered

emotional distress constitute claims for personal injury, which the policy defines to include "mental anguish or mental injury."

Defendant argues that our conclusion that plaintiffs intentionally caused Connell's economic loss precludes a different conclusion with respect to the allegations of emotional distress. Defendant relies on three decisions of this court that held or presumed that an occurrence cannot arise if the insured intended *some* harm, even if the actual harm turns out to be or include harm of a different type. *See Merrill*, 102 Or App at 410-12 (because sexual abuse committed by insured was necessarily intended to cause *some* harm, the fact that insured may not have intended the specific injuries sustained is immaterial—there is no occurrence and, hence, no duty to defend); *Falkenstein's Meat Co. v. Maryland Casualty Co.*, 91 Or App 276, 279-80, 754 P2d 621 (1988) (insurer was not required to defend retaliatory discharge claim against insured, in spite of employee's failure to allege that insured intended to cause any specific type of harm, because the intended consequence of insured's conduct was to cause *some* type of harm); *Cunningham & Walsh*, 88 Or App at 254-55 (insurer was not required to defend fraud claim against insured where economic harm was intended, regardless of whether insured also intended to cause claimed emotional distress).

Defendant acknowledges that its argument is directly contrary to this court's recent decision in *Minnis v. Oregon Mutual Ins. Co.*, 162 Or App 198, 986 P2d 77 (1999), *rev allowed* 330 Or 120 (2000). There, we held that an insurer owed a duty to defend its insured against a complaint for sexual harassment even though the victim's "allegations might require a jury to conclude that [the insured] intended to cause her emotional distress," because the complaint did not require an inference that additional damages sought for physical injury were also intentionally inflicted. *Id.* at 210-11.

Defendant urges us to reconsider and overrule *Minnis* in light of *Cunningham & Walsh*, *Falkenstein's Meat* and *Merrill*, none of which was discussed in *Minnis*. However, it is not necessary to address that dilemma in this case, because

we conclude that any cognizable emotional distress damages suffered by Connell must have been intentionally inflicted.[2]

The critical problem for plaintiffs lies in the relationship between the torts pleaded and the remedy sought by Connell. Although Connell's claims of breach of fiduciary duty and interference with economic relations both presume that plaintiffs' conduct infringed on a legally protected interest, those interests are not sufficient to support a claim for the *unintentional* infliction of emotional distress. We considered a similar problem in *McCulloch v. Price Waterhouse LLP*, 157 Or App 237, 251-52, 971 P2d 414 (1998), *rev den* 328 Or 365 (1999). There, we upheld the trial court's grant of a motion to strike, under ORCP 21 E, the plaintiff's claim for damages for emotional distress caused by the defendants' accounting negligence and breach of fiduciary duty. The plaintiff sought those damages based on the defendants' failure to file proper and timely tax returns, their failure to advise the plaintiff to terminate a trust and their alleged misrepresentations to the plaintiff regarding those matters. *Id.* The plaintiff argued that the law should "permit damages for emotional distress whenever a defendant is found to have recklessly violated fiduciary obligations which it knew *or should know* would cause emotional distress." *Id.* at 250 (emphasis added).

We rejected that premise, noting that the Supreme Court has not extended liability for negligence to emotional injury not accompanying any actual or threatened physical harm or any injury to another legally protected interest. *See Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 558-59, 652 P2d 318 (1982). We said:

"Assuming, without deciding, that defendants' conduct, as alleged, infringed on a legally protected interest of plaintiff, we hold that the infringement of that interest is not of sufficient importance to warrant an award of damages for emotional distress. The underlying interest arises from the

---

[2] For the same reason, we also do not reach defendant's argument that, despite the language of the policy, Connell's emotional distress is incidental to her uninsured claim for economic losses and is, thus, uncovered. *Compare Waller v. Truck Ins. Exchange*, 11 Cal 4th 1, 44 Cal Rptr 2d 370, 900 P2d 619 (1995) (so holding) *with Vigna v. Allstate Ins. Co.*, 686 A2d 598 (Me 1996) (rejecting similar argument).

relationship between plaintiff as a client and defendants as accountants. *Even though the relationship is fiduciary in nature, it is fundamentally an economic one. * * * The trial court did not err in granting defendants' motion to strike." McCulloch*, 157 Or App at 252 (emphasis added).[3]

The same is true here: Although Connell alleged that plaintiffs breached various fiduciary duties and interfered with her economic relations with her mother, the relationships breached were "fundamentally economic ones." It is the diminution of Connell's share of her expected inheritance that is at the heart of the alleged breaches of fiduciary duty and interference with economic relations. Therefore, in order for emotional distress damages to be recoverable, Connell was required to establish that plaintiffs *intended* to inflict emotional distress on her—in other words, that plaintiffs either desired to inflict emotional distress or that they knew that such distress was certain or substantially certain to result from their conduct. *See McGanty v. Staudenraus*, 321 Or 532, 550-51, 901 P2d 841 (1995). As noted, harm is caused *intentionally* within the meaning of an insurance policy in the same way. *Fox*, 327 Or at 514; *Snyder*, 278 Or at 413.

Although Connell did not expressly allege that plaintiffs intended to inflict emotional distress on her, based on the nature of the claims for which those damages were sought, it must be inferred that plaintiffs so intended. *See Nielsen*, 283 Or App at 281; *Hornbuckle v. Harris*, 69 Or App 272, 274, 686 P2d 418 (1984) (in determining whether complaint alleges facts sufficient to state a claim, courts are guided by ORCP 12 A, which requires that pleadings be construed with a view of substantial justice). Thus, Connell's claims for emotional distress damages did not result from an "occurrence." The fact that the breach of fiduciary duty claim

---

[3] The result in *McCulloch* would have been the same if the plaintiff had alleged that the emotional distress had been recklessly inflicted. In *Hammond v. Central Lane Communications Center*, 312 Or 17, 27, 816 P2d 593 (1991), the Supreme Court held that either of the same two requirements—that is, physical injury or violation of a sufficiently important protected interest—must be satisfied in order to establish a claim for the *reckless* infliction of emotional distress. *See also Otterness v. City of Waldport*, 130 Or App 550, 556, 883 P2d 228 (1994), *rev den* 320 Or 507 (1995).

does, in part, allege an occurrence—plaintiffs' alleged imprudent investing—does not assist plaintiffs, because that occurrence did not cause cognizable emotional distress damages.

In conclusion, defendant had no duty to defend plaintiffs against the Connell complaint, because none of Connell's claims alleged a personal injury or property damage that was the result of an occurrence. Therefore, the trial court did not err in granting summary judgment to defendant.

Affirmed.