Argued and submitted May 16, affirmed October 3, 2001

RED LION HOTELS, INC.,
*Appellant,*

*v.*

COMMONWEALTH INSURANCE COMPANY
OF AMERICA,
a Washington corporation;
Lexington Insurance Company,
a Delaware corporation;
Indemnity Insurance Company of North America,
a Pennsylvania corporation;
Travelers Casualty and Surety Insurance Company,
a Connecticut corporation;
Royal Insurance Company of America,
an Illinois corporation;
Great Lakes U.K.;
Reliance Insurance Company,
a Pennsylvania corporation;
and National Surety Corporation,
an Illinois corporation,
*Respondents.*

9901-00511

COMMONWEALTH INSURANCE COMPANY
OF AMERICA,
a Washington corporation;
Lexington Insurance Company,
a Delaware corporation;
Indemnity Insurance Company of North America,
a Pennsylvania corporation;
Travelers Casualty and Surety Insurance Company,
a Connecticut corporation;
Royal Insurance Company of America,
an Illinois corporation;
Great Lakes U.K.;
Reliance Insurance Company,
a Pennsylvania corporation;

and National Surety Corporation,
an Illinois corporation,
*Respondents,*

*v.*

RED LION HOTELS, INC.,
*Appellant,*

*and*

PROMUS HOTELS, INC.,
*Defendant.*

9907-08266; A109853

33 P3d 358

Michael A. Lehner argued the cause for appellant. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

R. Daniel Lindahl argued the cause for respondents. With him on the brief were John A. Bennett and Bullivant Houser Bailey, P.C.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges

HASELTON, P. J.

## HASELTON, P. J.

In this insurance coverage dispute, plaintiff, the insured, appeals, assigning error to the allowance of summary judgment in favor of defendant insurers.[1] Plaintiff argues that the trial court erred in concluding that: (1) flood damage to a riprap bank on plaintiff's property along the Columbia River fell under a policy exclusion for "land, land values, and the cost of excavations, grading, backfilling, or filling"; (2) even if the damage was not excluded from coverage, plaintiff's claim was time-barred; and (3) because Oregon law applied to the parties' coverage dispute, plaintiff could not bring a claim under Washington's Consumer Protection Act. We conclude that the claimed damages were excluded from coverage and that the lack of coverage obviates any consideration of plaintiff's other arguments. Consequently, we affirm.

The facts material to our analysis are uncontroverted. This dispute, like many,[2] has its genesis in the 100-year flood of February 1996. Plaintiff Red Lion Hotels, Inc.,[3] owned hotel properties on both sides of the Columbia River, including at Jantzen Beach in North Portland. During the February 1996 flood, portions of the Jantzen Beach property adjacent to the Columbia sustained flood damage. That area, which before the flood had consisted of a riverbank reinforced with large rock (riprap) to limit erosion, was significantly eroded and destabilized by flood waters. The erosion also threatened the integrity of a fire road, parking lot and walkway adjacent to the river.

---

[1] As discussed below, this appeal involves two actions that were consolidated before the trial court: (1) the insured's action for breach of contract and relief under the Washington Consumer Protection Act; and (2) the insurers' subsequently filed declaratory judgment action. For convenience, we refer to the parties by their status in the first-filed action.

[2] See, e.g., Hutcheson v. City of Keizer, 169 Or App 510, 8 P3d 1010 (2000); Protection Mutual Ins. Co. v. Mitsubishi Silicon, 164 Or App 385, 992 P2d 479 (1999), rev den 330 Or 331 (2000).

[3] Plaintiff is a Delaware corporation which, at the time the parties entered into the insurance contract at issue, maintained its corporate headquarters in Vancouver, Washington. The parties disagree as to whether plaintiff, which has been sold recently, still maintains its principal place of business in Washington.

At the time of the flooding, all of plaintiff's North American properties were insured under a policy issued by defendants. Almost immediately after the flooding, plaintiff and defendants, through a local adjuster, began the process of estimating damages and determining the scope of coverage. As a result of that process, defendants covered most of the necessary repairs to the Jantzen Beach property. Defendants, however, reserved the right to deny coverage for the riverbank pursuant to the policy's exclusion (the "land exclusion") for damage to "[l]and, land values and the cost of excavations, grading, backfilling, or filling * * *."

In January 1999, plaintiff brought this action, alleging that defendants had breached the policy by failing to indemnify plaintiff for "damage to certain structures, including a riprap seawall and the adjacent road, walkways and parking lot." In July 1999, defendants filed a separate action seeking a declaratory judgment that, *inter alia*, the damage to the riverbank was excluded from coverage under the policy, and that plaintiff's claim was time-barred. The trial court granted defendants' motion to consolidate the two actions.

Defendants ultimately moved for summary judgment. For purposes of our review, the operative pleading is plaintiff's second amended complaint, which alleged two claims for relief. The first claim, for breach of contract, reprised the allegations of the original complaint. The second claim, under the Washington Consumer Protection Act (CPA), RCW 19.86.010 *et seq.*, alleged that defendants, by failing to notify plaintiff of any impending contractual or statutory limitation deadline, violated a Washington insurance regulation requiring insurers to provide insured parties with such notice. *See* WAC 284-30-380(5).[4] The complaint further asserted that, under the Washington CPA, plaintiff

---

[4] WAC 284-30-380(5) states:

"Insurers shall not continue negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the claimant's rights may be affected by a statute of limitations or a policy or contract time limit, without giving the claimant written notice that the time limit may be expiring and may affect the claimant's rights. Such notice shall be given to first party claimants thirty days and to third party claimants sixty days before the date on which such time limit may expire."

was entitled to recover the value of those otherwise time-barred insurance benefits, plus treble damages.

Defendants' motion for summary judgment rested on three arguments. First, the shoreline repair was not a covered risk under the policy because it fell under the policy's exclusion for "[l]and, land values and the cost of excavations, grading, backfilling or filling." Second, in all events, plaintiff's claim under the policy was time-barred under either the policy's 18-month limitations period[5] or, if that limitation was somehow unenforceable, the two-year limitation of claims under "fire insurance" policies prescribed by ORS 742.240.[6] Third, plaintiff's Washington CPA claim was not cognizable because Oregon law, not Washington law, governed the parties' dispute, rendering the Washington CPA inapplicable.

The trial court allowed summary judgment. In so ruling, the court concluded that the claimed damage was excluded from coverage by the policy's land exclusion, and that, in all events, plaintiff's claim was time-barred under ORS 742.240. The court further determined that, under choice of law principles, Oregon law, not Washington law, controlled.[7] On appeal, plaintiff challenges each of those determinations.

---

[5] Section III S of the policy states:

"No suit or action on this policy for the recovery of any claim will be sustainable in any court of law or equity unless the Insured will have fully complied with all the requirements of this policy. The Company agrees that any action or proceeding against it for recovery of any loss under this policy will not be barred or commenced within eighteen (18) months next after the occurrence becomes known to the Insured unless a *longer period of time is provided by applicable statute.*"

[6] ORS 742.240 states:

"A fire insurance policy shall contain a provision as follows:

" 'No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months next after inception of the loss.' "

[7] In its letter opinion, the court did not specifically address defendants' arguments pertaining to plaintiff's Washington CPA claim. Nevertheless, the court's order granting summary judgment stated that defendants' motion "is granted in its entirety" and the subsequent judgment dismissed plaintiff's "claims."

■    Because it is dispositive, we begin with the coverage issue.[8] The policy provides coverage for, *inter alia*, "real and personal property owned by the insured." Section I C(1)(A)(1). That broad statement of coverage is limited by the exclusions set forth in Section II of the policy. Among those exclusions is the "land exclusion" at issue here:

> "This policy excludes:

> *"Land, land values and the cost of excavations, grading, backfilling or filling*; however, to the extent included in any contract document, the cost of excavation, grading, filling or backfilling and the value of the earth to be used in the completion of the contract work is not to be excluded during the course of construction." Section II A(4) (emphasis added).

Plaintiff suggests that that exclusion does not apply to the riprap bank because the bank constitutes an engineered structure designed to limit erosion. In that sense, plaintiff argues, the bank is no different from any other engineered seawall and is thus distinguishable from excluded bare land.

    Conversely, defendants argue, essentially, that, however constructed, the bank is nothing more than a graded slope over which fill—in this instance sand, crushed rock, and riprap—has been placed to stabilize the slope. Thus, defendants argue, the riprap bank here falls under the exclusion because it is nothing more than land that has been graded and filled. For the reasons that follow, we agree with defendants.

■    The interpretation of a provision in an insurance policy is a question of law, and our task is " 'to ascertain the intention of the parties.' " *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992) (quoting

---

[8] The parties do not dispute that, at least with respect to the coverage issue, there is no material distinction between Oregon's and Washington's approaches to issues of insurance policy interpretation. *Compare Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992), *with Key Tronic v. Aetna (Cigna) Fire Ins. Co.*, 124 Wash 2d 618, 881 P2d 201 (1994). Because the coverage issue is ultimately dispositive, we need not resolve the parties' choice of law dispute with respect to other matters that would be implicated only if we resolved the coverage issue differently. *See Angelini v. Delaney*, 156 Or App 293, 300, 966 P2d 223 (1998), *rev den* 328 Or 594 (1999) (if there is no material difference between Oregon substantive law and the law of the other forum, there is a "false conflict" and Oregon law applies).

*Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985)). We determine the intention of the parties based on the terms and conditions of the insurance policy. *Id.* If the term at issue is not defined in the policy, we look to the plain meaning of the term. *Id.* at 470. If there is more than one plausible interpretation of the term's plain meaning, we must scrutinize each interpretation in the light of the specific context in which the term is used in the policy and also in the broad context of the policy as a whole. Finally, if, after that contextual inquiry, both purported interpretations remain reasonable, we apply the principle that the contract is to be construed against the drafter. *Id.* at 470-71. *See also North Clackamas School Dist. No. 12 v. OSBA*, 164 Or App 339, 344-45, 991 P2d 1089 (1999), *rev den* 330 Or 361 (2000) (summarizing *Hoffman Construction* analysis).

In this case, the policy does not define any of the relevant terms. Thus, we consider their plain meaning. "Land," as an excluded subset of covered "property,"[9] is "any ground, soil, or earth whatsoever regarded as the subject of ownership (as meadows, pastures, woods) and everything annexed to it * * *." *Webster's Third New Int'l Dictionary*, 1268 (unabridged ed 1993). "Excavation" is the "action or process of excavating," *id.* at 791, while the verb "excavate" means "to dig out and remove (as earth or mineral matter)." *Id.* "Grade," used as a verb, means "to reduce (as the line of a canal or roadbed) to an even grade whether on the level or in a progressive ascent or descent." *Id.* at 985. To "fill" is "to supply with as much material as can be held or contained." *Id.* at 849. Finally, to "backfill" is "to replace earth in (as a trench or the open space around a foundation or wall); *also* : to refill (as an excavation) with any material." *Id.* at 158.

Applying those plain meanings here, we conclude that, regardless of whether the riprap was "land" (as defendants contend) or a "structure" (as plaintiff contends), the cost of remediation of damage was excluded as "the cost of * * * grading, filling, or backfilling." It is uncontroverted

---

[9] "Property" is "something that is or may be owned or possessed * * *: something to which a person has legal title: an estate in tangible assets (as lands, goods, money) or intangible rights (as copyrights, patents) in which or to which a person has a right protected by law." *Webster's Third New Int'l Dictionary*, 1818 (unabridged ed 1993).

that, as a consequence of the February 1996 flood, the river-bank along plaintiff's Jantzen Beach property was significantly eroded. The project for which plaintiff seeks coverage here, which was designed to remedy that erosion and preclude future erosion, entailed grading the eroded bank to a uniform slope of 30 degrees, placing fill and crushed rock atop the uniformly graded slope, and ultimately covering the entire slope with a two-foot layer of Class II riprap[10] to limit erosion. Notwithstanding the engineering that went into planning the project, no aspect of the project entailed anything other than grading, filling and backfilling of land with soil, earth, mineral matter, or other fill material. Thus, plaintiff's riverbank restoration project fell under the policy's land exclusion, and was not a covered risk.

Plaintiff nevertheless argues that, even if the river-bank is not covered, the fire road, parking lot, and walkway adjacent to the riverbank fall outside the land exclusion. In opposing summary judgment, plaintiff did not argue that, even if restoration of the riverbank itself falls under the policy's land exclusion, there remained a triable issue as to whether those structures were properly excluded and, if not, the measure of damages related to those structures. Had plaintiff raised that argument before the trial court, it is possible that the evidentiary record might have been developed differently or that the court *might* have ruled differently. Consequently, that argument was not properly preserved for appeal. *See* ORAP 5.45; *Sherwood v. ODOT*, 170 Or App 66, 71, 11 P3d 664 (2000), *rev den* 331 Or 692 (2001) (applying preservation doctrine in summary judgment context); *J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995) (describing rationale for preservation requirement).

Our conclusion that there was no coverage concomitantly precludes plaintiff's claim under the Washington CPA.

---

[10] "Riprap" is "a foundation or sustaining wall of stones thrown together without order (as in deep water, on a soft bottom, or on an embankment slope to prevent erosion)." *Webster's Third New Int'l Dictionary*, 1960 (unabridged ed 1993). The evidence indicates that "Class II riprap" is comprised of rock that generally ranges in weight from 25 to 250 pounds, with 75 percent of the rocks (by weight) weighing between 50 and 250 pounds, 30 percent (by weight) weighing more than 150 pounds, and 10 percent (by weight) weighing less than 25 pounds.

To prevail on its Washington CPA claim, plaintiff must show that it was injured by defendants' allegedly proscribed actions. *See State Farm Fire and Cas. Co. v. Huynh*, 92 Wash App 454, 962 P2d 854, 861 (1998) (elements of a consumer claim under the Washington CPA are: "unfair or deceptive act or practice; occurring in trade or commerce; impacts public interest; and causes injury to plaintiff in his business or property"). Plaintiff cannot make such a showing.

Plaintiff's theory of recovery under the Washington CPA, as framed by its complaint and memorandum opposing summary judgment, was that, as a result of defendants' improper conduct, it "has been denied insurance benefits of approximately $650,000 * * *." Stated differently, plaintiff sought damages based on the amount that plaintiff *would have recovered* under the policy had the claim been timely. Under plaintiff's theory of recovery, the existence of an "injury" hinged on the assumption that, had its claim been timely filed, it would have been entitled to coverage under the policy. As detailed above, however, that assumption is incorrect. *See* 177 Or App at 64-66. Consequently, plaintiff has failed to demonstrate that there is a triable issue regarding the injury element of its Washington CPA claim, and summary judgment as to that claim was appropriate.[11]

Given our conclusion regarding coverage, we need not address plaintiff's argument that its claim was timely. The trial court correctly granted summary judgment.

Affirmed.

---

[11] On appeal, plaintiff argues for the first time that it is entitled to recover under the Washington CPA regardless of the resolution of the coverage issue: "Washington law clearly provides Red Lion with a claim under the Washington Consumer Protection Act for the acts of the insurers in this case. This cause of action exists even if the insurers are correct that their policy provides no coverage * * *." *See Coventry Associates v. Am. States Ins. Co.*, 136 Wash 2d 269, 961 P2d 933 (1998) (under Washington CPA, consumer injured by insurer's bad faith can state a claim even in the absence of coverage). That contention was not, however, raised below and, if it had been, the development of the summary judgment evidentiary record and the trial court's disposition might have been affected. Accordingly, we decline to consider that unpreserved theory of recovery. *J. Arlie Bryant, Inc.*, 132 Or App at 568.