**WEST COAST BANCORP, an Oregon corporation; West Coast Bank, an Oregon banking institution, Plaintiffs–Appellants,**

v.

**BANCINSURE, INC., an Oklahoma corporation, Defendant–Appellee.**

No. 05–35843.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2007.

Filed Dec. 4, 2007.

John Folawn, Esq., Kirklin Folawn LLP, Portland, OR, for Plaintiffs–Appellants.

Loren D. Podwill, Esq., Lisa E. Lear, Esq., Bullivant Houser Bailey, PC, Portland, OR, for Defendant–Appellee.

Before: FISHER and BERZON, Circuit Judges, and MOSKOWITZ, District Judge.*

## MEMORANDUM **

Upon motion for summary judgment, the district court ruled that West Coast Bancorp (Bank) was not entitled to coverage for the Fischer and BASS lawsuits under the terms of the lender liability endorsement (Endorsement) to the directors and officers policy (Basic Policy) issued by BancInsure Inc. (Insurer). We affirm the district court's ruling denying coverage for the Fischer lawsuit on the grounds that the Fischers were not "Borrowers" as defined in the Endorsement. We reverse the district court's ruling that the Bank's November 23, 1998 notice of claim regarding the potential for the BASS lawsuit did not suffice to preserve coverage.

### I.

The Fischer lawsuit is not covered under the Endorsement because the Fischers were not "Borrowers." The Endorsement defines Borrower as "any person or entity ... to which an extension of credit, or a refusal to extend credit was made or negotiated." This language requires in plain and unambiguous terms that a Borrower is the contemplated recipient of a

---

* The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

loan, whether the loan is actually made or negotiated but ultimately refused. *See North Clackamas Sch. Dist. No. 12 v. Oregon Sch. Boards Ass'n Prop. & Cas. Trust,* 164 Or.App. 339, 991 P.2d 1089, 1092 (1999) (directing courts to construe contracts by examining the plain meaning of the language). The Fischers were not Borrowers because they were the third-party beneficiaries of the Bank's commitment to lend money to BASS rather than the persons to whom the loan would be made. Moreover, the Fischers may have discussed the terms of the Bank's loan to BASS, but the Bank did not negotiate an extension of credit *to* the Fischers.

## II.

We hold that the BASS lawsuit was covered under the terms and conditions of the Endorsement. First, the Bank's November 1998 notice of the potential BASS claim within the policy period served to extend coverage to the BASS lawsuit filed after the policy period. The district court held that coverage did not extend to the BASS lawsuit because it was not filed during the policy period and, therefore, the Endorsement was not "in force." We conclude that the district court erred by simply conflating the time period during which the Endorsement is "in force" with the policy period, rather than interpreting the term "in force" in the broader context of the Basic Policy and Endorsement as a whole. *See Hoffman Constr. Co. v. Fred S. James & Co.,* 313 Or. 464, 836 P.2d 703, 706 (1992) (holding that interpretations must be examined in the light of the particular context in which a term is used and the broader context of the policy as a whole).

■ Section VIII of the Basic Policy allows for coverage of claims arising after the Policy Period as long as notice of the potential for these claims was given to the Insurer during the policy period. The Endorsement incorporates the terms and conditions of the Basic Policy with the exception of a few provisions and Section VIII is not one of the excluded provisions. Thus, we interpret the Endorsement as incorporating Section VIII. Given that the Endorsement incorporated Section VIII, the Endorsement should be construed as "in force" until any properly noticed potential claims become actual claims.

At the least, opposing constructions of the "in force" language may be reasonable, rendering this provision of the Endorsement ambiguous under Oregon law. *See Hoffman,* 836 P.2d at 706. Because any ambiguity in insurance policy provisions must be interpreted against the Insurer, the Endorsement should be construed to allow for coverage of claims arising outside the policy period if the Bank timely notified the Insurer of the potential for these claims. *See Hoffman,* 836 P.2d at 706–07.

■ Second, the form and content of the Bank's November 1998 letter to Insurer was sufficient to satisfy the policy's notice requirements. Contrary to the Insurer's contention, the notice invokes coverage under the Endorsement by describing a possible wrongful lending act and also identifying the Bank as the relevant insured person and potential defendant.

## III.

Finally, we conclude that the issue of whether the Bank suffered a loss due to the BASS lawsuit involves factual questions that preclude summary judgment. In addition to the Bank's internal accounting of the BASS settlement, the following factual information may also be relevant to calculating the value of any losses resulting from the BASS suit: (1) the fair market value of the property at various points in time; (2) the value of the $2.83 million

deficiency judgment against BASS that the Bank relinquished; and (3) the amount of the legal expenses incurred by the Bank in defending the BASS claims. Because the above factors involve questions of fact, summary judgment would not be appropriate on the present record before the court.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**