Argued and submitted February 5, 2013, affirmed July 2, petition for review denied December 24, 2014 (356 Or 638)

SAFECO INSURANCE COMPANY OF OREGON,
*Plaintiff-Respondent,*

*v.*

Sohail MASOOD,
*Defendant-Appellant.*

Clackamas County Circuit Court
CV09040785; A147177

330 P3d 61

David Axelrod argued the cause for appellant. With him on the opening brief were Manasi Kumar, Sara Kobak, and Schwabe Williamson & Wyatt, P.C. With him on the reply brief were Abra T. Cooper, Sara Kobak, and Schwabe, Williamson & Wyatt, P.C.

Stephen F. Deatherage argued the cause for respondent. On the briefs were John A. Bennett, Emilie K. Edling, and Bullivant Houser Bailey PC.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.*

DE MUNIZ, S. J.

_____
* De Muniz, S. J., *vice* Nakamoto, J.

## DE MUNIZ, S. J.

The issue in this case is whether an insured, after filing a claim of loss, may condition compliance with an insurer's information requests by requiring the insurer to execute a confidentiality agreement that imposes limitations on the insurer's use of the insured's personal information. Plaintiff, Safeco Insurance Company of Oregon (Safeco), refused to enter into such an agreement with the insured, Masood, and filed a declaratory judgment action. The trial court entered summary judgment for Safeco, concluding that the terms of the policy required Masood to cooperate with Safeco's claim investigation and that Masood could not condition his cooperation on the negotiation of additional contractual terms. For the reasons that follow, we affirm.

We take the facts from the summary judgment record and view those facts and all reasonable inferences that may be drawn from them in the light most favorable to Masood, the nonmoving party. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004).

Masood had a homeowner insurance contract with Safeco when a fire destroyed his residence. Masood and his family were displaced from the residence while firefighters and clean-up crews worked on the site. Safeco provided security for the property during the cleanup. After returning to the residence, Masood reported a theft from the site of approximately $3.5 million of personal property. Masood alleged that the theft occurred after the fire while Safeco had control of the site. Following receipt of Masood's claim of loss for the stolen property, Safeco initiated an investigation of the claim. As part of its investigation, Safeco requested that Masood furnish information such as financial statements, records of Masood's children's college fees, all health insurance costs for Masood and his family, and the monthly expenses associated with Masood's pet care. Safeco also demanded that Masood consent to the disclosure of his Social Security information to vendors from which Masood had purchased tangible goods.

The portion of the parties' insurance contract that bears on Safeco's information requests provides:

"3.   An Insured's Duties After Loss. In case of a loss to which this insurance may apply, you must perform the following duties:

"＊ ＊ ＊ ＊ ＊

"e.   prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, replacement cost and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

"f.   as often as we reasonably require:

"(1)   exhibit the damaged and undamaged property;

"(2)   provide us with records and documents we request and permit us to make copies; and

"(3)   submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other insured. You shall not interfere with us examining any other insured."

(Emphasis omitted.)

In response to Safeco's information demands, Masood drafted a proposed confidentiality agreement that placed restrictions on Safeco's use of Masood's personal information and contact with third parties in relation to Safeco's investigation of the claim. Masood invited Safeco to negotiate the terms of the confidentiality agreement and stated that he would provide all requested information if "his privacy and other rights [were] respected and protected." Safeco rejected the proffered confidentiality agreement and filed a declaratory action seeking a declaration that Safeco was entitled to the requested information. The trial court entered summary judgment in favor of Safeco, and Masood appealed.

Masood agrees that Safeco has a contractual right to investigate his claim of loss and that he is contractually bound to cooperate with Safeco's investigation of the claim. Although, in the trial court and in his brief in this court, Masood has described some of the information requested by Safeco as "wholly unrelated to the cause of the loss or the loss claim," that is not his argument. Rather, Masood argues that, because his financial information is "sensitive,"

and because every insurance contract in Oregon includes the implied duty of good faith and fair dealing, and because the contract must be construed in a manner consistent with the understanding of an "ordinary" insured, he had a contractual right to require Safeco to enter into a confidentiality agreement before furnishing the requested financial information.

Before addressing Masood's contractual arguments, we explain what is not at issue in this dispute between the insurer and the insured. As noted in the trial court's ruling, Masood has "the benefit of any existing legal protections as to personal information." The record does not demonstrate that, absent the confidentiality agreement at issue here, Masood would be without legal recourse if Safeco used the information provided by him in an unreasonable or malicious way that caused Masood damage. Nor does Masood claim that Safeco intends to use the information in such a way.[1] And, as noted above, Masood does not argue in this court that the information requested by Safeco is unrelated to the loss investigation. Accordingly, we do not address whether an insured may refuse an insurer's information request that is unreasonable or unrelated to the claim of loss.

The interpretation of an insurance contract presents a legal question, and the court's task is "'to ascertain the intention of the parties.'" *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992) (quoting *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985)). When the language of the contract is not ambiguous, the policy is interpreted in accordance with its unambiguous terms. *Id.* at 469-70. Unless a term is defined in the contract, the court presumes that the words used within it have their plain, ordinary meanings. *Patton v. Mutual of Enumclaw Ins. Co.* 238 Or App 101, 119-20, 242 P3d 624 (2010), *rev den*, 349 Or 654 (2011). Moreover, "the interpretation of an insurance policy is not to be resolved

---

[1] Masood argues that the trial court erred in denying Masood's motion for leave to file a supplemental answer alleging additional facts about Safeco's later-occurring conduct with respect to Safeco's possible use and dissemination of Masood's personal information. We reject that assignment of error without further discussion.

by reference to evidence extrinsic to the policy itself," *id.* at 120, such as the parties' conduct subsequent to making the contract.

The Oregon Supreme Court has never adopted a standard of insurance contract interpretation that emphasizes the understanding of the insured over the understanding of the insurer when the contract terms are unambiguous.[2] Rather, the court has advised that, in "interpreting the meaning of an insurance policy, '[t]he primary and governing rule * * * is to ascertain the intention of *the parties.*'" *Dewsnup v. Farmers Ins. Co.*, 349 Or 33, 39-40, 239 P3d 493 (2010) (quoting *Hoffman*, 313 Or at 469) (alteration in original) (emphasis added). "Issues of contractual intent are determined by the objective manifestations of the parties based on the terms that they use and not on what they subjectively believe that the terms mean." *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 503, 156 P3d 105, *rev den*, 343 Or 363 (2007). The intention of the parties is determined by considering the objective terms and conditions set forth in the policy. *Hoffman*, 313 Or at 469. Only if a contractual ambiguity exists does the court construe the policy in a manner that favors the insured. *Red Lion Hotels, Inc. v. Commonwealth Ins. Co.*, 177 Or App 58, 64-65, 33 P3d 358 (2001).

Here, the contract between the parties provides that an insured "must," as often as Safeco reasonably requires, "provide [Safeco] with records and documents [that Safeco] request[s]." There is no ambiguity. Under the contract, Safeco had an express contractual right to request information, and Masood had an express contractual duty to provide the requested information.

---

[2] Masood cites *Borgland v. World Ins. Co.*, 211 Or 175, 181, 315 P2d 158 (1957), and *Kelch v. Industrial Indemnity Co.*, 93 Or App 538, 541, 763 P2d 402 (1988), which include statements to the effect that insurance contract terms are interpreted "in the sense in which the insured had reason to suppose it was understood." *Borglund*, 211 Or at 181 (quoting *National Life & Accident Insurance Co. v. Davies*, 34 Ala App 290, 293, 39 So2d 697 (1949)). However, that statement in *Borgland* was from an out-of-state case that was part of the court's review of cases discussing the interpretation question in that case. *Borgland* did not adopt that position. *Kelch* mistakenly relied on that portion of *Borgland* as it had been restated in *State Farm Mutual Ins. Co. v. White*, 60 Or App 666, 672, 655 P2d 599 (1982), *rev den*, 294 Or 569 (1983), as if it had been part of the holding in *Borgland*. It was not.

Masood argues that an insured would not understand that those duties exist under the contract, pointing out that nothing in the contract expresses an unconditional duty on the part of the insured to cooperate and produce any and all information requested by an insurer. As explained in *Stumpf v. Continental Casualty Co.*, 102 Or App 302, 309, 794 P2d 1228 (1990), "[t]he rights and duties of the parties to an insurance policy are contractual. Therefore, the duties of each are limited to those derived from the policy." (Internal citations omitted.) Nor can the implied duty of good faith and fair dealing be construed in a way that changes or inserts terms into a contract. Instead, "[t]he law imposes a duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract." *Whistler v. Hyder*, 129 Or App 344, 348, 879 P2d 214, *rev den*, 320 Or 453 (1994).

Safeco's information requests sought records and documents relating to Masood's family expenses and expenditures. Safeco's information requests were authorized under section 3(f)(2) of the contract, and Masood was obligated under the contract to comply with the requests.[3] Under the contract, Safeco owed Masood only the implied duty to act in good faith in making its information demands and in handling Masood's personal information. Any additional contractual restrictions on Safeco's claim investigation or use of Masood's personal information—such as the confidentiality agreement that Masood sought—would impose restrictions on Safeco not contained in the contract. Because Masood owed Safeco the duty to cooperate and comply with Safeco's information requests, and because Masood was not free to unilaterally modify the contract to impose additional restrictions on Safeco's claim investigation, we conclude

---

[3] Masood also argues that, although ORS 742.230, like the contract at issue here, requires the insured to cooperate and furnish information to the insurer, that statute limits the scope of the insurer's requests to records about events causing the loss and the insured property subject to loss. According to Masood, Safeco's information requests exceed what the statute authorizes, and, therefore, Masood was not required to comply with the requests. Whatever might be the merits of that argument, the issue was not preserved for appellate review. *See, e.g., Secor Investments, LLC v. Anderegg*, 188 Or App 154, 170, 71 P3d 538, *rev den*, 336 Or 146 (2003) (issues not timely raised in the trial court are not preserved for appellate review).

that Safeco was entitled to the declaratory judgment that it sought.

Affirmed.