Argued and submitted December 19, 2000, affirmed February 21, 2001

MUTUAL OF ENUMCLAW INSURANCE COMPANY,
*Appellant,*

*v.*

VIRGINIA GUTMAN,
Donald Gutman, Dove Gutman,
Fawn Carr, and Mathew Carr,
individually and as guardian ad litem
for Aaron Carr and Heather Carr,
*Respondents.*

(16-98-12462; CA A106916)

21 P3d 101

Thomas M. Christ argued the cause for appellant. With him on the briefs was Mitchell, Lang & Smith.

J. Marie Bischman argued the cause for respondents Virginia Gutman, Donald Gutman, Dove Gutman, and Fawn Carr. With her on the brief were Robert L. Winkler and Parks, Bauer, Sime & Winkler.

No appearance by respondent Mathew Carr.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

The issue in this case is whether plaintiff, Mutual of Enumclaw Insurance Company, was obligated to defend its insureds, Donald and Virginia Gutman and their daughter, Fawn Carr, in an action brought against them that included a claim for false imprisonment. The trial court granted summary judgment to the insureds, declaring that plaintiff owed them a duty of defense. We affirm.

In 1992, plaintiff issued two homeowner's insurance policies to the Gutmans. Fawn and her children, Aaron and Heather, were living with the Gutmans when the second policy was issued. Because Fawn is related to the Gutmans and was living with them for at least part of the time that both policies were in effect, the parties agree that she is an additional insured under each policy. In 1998, Mathew Carr, Fawn's former husband and the father of Aaron and Heather, brought an action against defendants[1] that included five claims—three on his own behalf and two as guardian *ad litem* for the children. Only one of those claims, the false imprisonment claim that Carr brought on behalf of the children, is relevant to this appeal. In substance, Carr alleged in that claim that Fawn, with the Gutmans' help, removed the children from Oregon and confined them elsewhere so that Carr could not be with them.

Defendants tendered the defense of the action to plaintiff. Plaintiff rejected the tender and initiated this action for a judgment declaring that it was not required to defend against Carr's action. Defendants filed an answer and counterclaim in which they sought a judgment declaring that plaintiff owed a duty to defend them under each policy. On cross-motions for summary judgment, the trial court granted summary judgment in favor of defendants and against plaintiff.

On appeal, plaintiff argues that the trial court erred in concluding that it was obligated to defend defendants, because (1) the injuries allegedly suffered by the children as

---

[1] Carr also named the Gutmans' other daughter, Dove, as a defendant in the action. She is not a party to this appeal. We refer to the Gutmans and Fawn as defendants in this proceeding.

a result of defendants' conduct were intentionally inflicted and, thus, did not arise from an "occurrence" under the policies; (2) the "penal act" exclusion contained in endorsements to the policies prohibits coverage; and (3) public policy precludes coverage for the tortious conduct alleged by Carr. In the context of those arguments, the parties debate the application of various principles of insurance law. We confine our discussion to the issues that, in our view, are dispositive.

■ Because the material facts are not in dispute, we review the trial court's rulings on the summary judgment motions to determine whether defendants or plaintiff were entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *Drake v. Mutual of Enumclaw Ins. Co.,* 167 Or App 475, 1 P3d 1065 (2000). In *Drake,* we summarized the test for determining whether a liability carrier owes a duty to defend its insured:

> "Whether an insurer has a duty to defend presents a question of law, which is determined by comparing the terms of the insurance policy with the allegations of the complaint against the insured. *Klamath Pacific Corp. v. Reliance Ins. Co.*, 151 Or App 405, 413, 950 P2d 909 (1997), *on recons* 152 Or App 738, 955 P2d 340 (1998). If the complaint alleges facts that, if proved, would impose liability covered by the policy, the insurer must defend, even if some of the conduct alleged would not be covered. *Ledford v. Gutoski*, 319 Or 397, 400, 877 P2d 80 (1994); *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 645, 576 P2d 1244 (1978)." 167 Or App at 478.

In his claim on behalf of the children for false imprisonment, Carr alleged:

"22.

"Plaintiff incorporates by reference those allegations contained within paragraphs 1 and 2 of Plaintiff Mathew Carr's first claim for relief.[2]

---

[2] Those paragraphs alleged that:

"1.

"At all times material herein Mathew Carr was the natural father of Aaron Carr and Heather Carr and was entitled to custody and/or visitation and access with said minor children.

"23.

"Mathew Carr was appointed as guardian ad litem for the minor children Aaron Carr and Heather Carr.

"24.

"At all times material herein and most specifically from August 1992 through and including December of 1996 the defendants and each of them did knowingly and personally, aid and abet each other in taking the children from the State of Oregon, secreting and hiding the children out of the Eugene/Springfield area, outside the State of Oregon and outside of the United States keeping Aaron Carr and Heather Carr from being with their natural father Mathew Carr.

"25.

"At all times material herein the Defendants and each of them intended to confine Aaron Carr and Heather Carr and did so confine them, not allowing them to leave their home, to be in public and to be with their natural father Mathew Carr.

"26.

"The confinement as indicated above was total and complete and the confinement was by physical barrier and by authority and intimidation. The confinement and restraint upon the minors' liberty was without the minors' consent and because of their age they were unable to consent.

"27.

"As a direct, substantial and proximate result of the acts of the Defendants and each of them as set forth above Aaron Carr suffered much emotional distress, anxiety, reduction in health, loss of services, companionship and enjoyment with his father, Mathew Carr, all to his non-economic damage in the sum of $500,000.00.

---

"2.

"At all times material herein Fawn Carr was the natural mother of the aforementioned children. Dove Gutman was the sister of Fawn Carr and Virginia and Donald Gutman were the maternal grandparents of the minor children Aaron Carr and Heather Carr."

"28.

"As a direct, substantial and proximate result of the acts of the Defendants and each of them set forth above Heather Carr suffered much emotional distress, anxiety, reduction in health, loss of services, companionship and enjoyment with her father, Mathew Carr, all to her non-economic damage in the sum of $500,000.00."

With the allegations of the false imprisonment claim in mind, we turn to the identical controlling provisions in each of the homeowners' policies issued by plaintiff. The policies cover claims for "damages because of bodily injury" that are caused by an "occurrence." By endorsement, the definition of bodily injury is amended to include "personal injury." The critical policy terms are defined as follows:

"5. **'occurrence'** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

"a. **bodily injury**; or

"b. **property damage**.

"* * * * *

"Under Coverage E - Personal Liability, the definition [of] **bodily injury** is amended to include personal injury.

" 'Personal injury' means injury arising out of one or more of the following offenses:

"1. false arrest, detention or imprisonment, or malicious prosecution.

"* * * * *

"Section II Exclusions do not apply to personal injury. Personal injury insurance does not apply to:

"* * * * *

"2. injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an **insured**[.]" (Boldface in original.)

Plaintiff first contends that, even though the policies cover injuries resulting from false imprisonment, the injuries

must nonetheless be bodily injuries that arose from an occurrence. Although plaintiff acknowledges that the personal injury endorsements broaden the definition of bodily injury, it asserts that they do not eliminate the requirement of an occurrence as a condition of coverage. Plaintiff argues that, because false imprisonment is an intentional tort, any resulting injury is not accidental and, thus, cannot constitute an occurrence within the policies' meaning. Because, as we now explain, plaintiff is mistaken with respect to the last point, we need not consider whether the other threads of its argument are correct.

■        Under the policies, an "occurrence" means an "accident." The policies do not define "accident," but the term's meaning in liability insurance policies is well established and unambiguous. "It does not focus on the intentionality of [the insureds'] conduct but, rather, looks to whether they intended to cause injury to the [alleged victim]." *Drake*, 167 Or App at 481. *See also Ledford*, 319 Or at 401 (holding that "[i]njuries resulting from intentional acts are excluded from insurance coverage when the insured intended to cause the particular injury or harm, as opposed to merely intending the act"). The question is whether the insured specifically intended the harm suffered or, alternatively, engaged in an act so certain to cause the particular kind of harm that the court will say that the insured intended the harm. *Drake*, 167 Or App at 483. Plaintiff acknowledges that Carr did not expressly allege that defendants intentionally injured the children. However, plaintiff contends that the complaint in effect alleged that defendants intended to harm the children by asserting that defendants "intended to confine [the children]." According to plaintiff, the confinement, by keeping the children from their father, "is harm in itself." Thus, plaintiff argues, defendants must have intended to harm the children. We disagree.

■        The policies cover claims for *damages* because of bodily injury that are caused by an occurrence. Damages because of bodily injury are caused by an occurrence, unless the insured subjectively intended to cause the *particular injuries* that produced the damages. *See Ledford*, 319 Or at 401-02; *Allstate Ins. Co. v. Stone*, 319 Or 275, 278-79, 876 P2d 313 (1994). Carr did not seek to recover damages for harm that somehow inhered *per se* in the confinement of the children.

Instead, he sought damages for the children's "emotional distress, anxiety, reduction in health, loss of services, companionship and enjoyment with [their] father." The false imprisonment claim did not allege that defendants intentionally inflicted any of those injuries on the children.[3] Therefore, it alleged an occurrence within the meaning of the policies, and plaintiff's first argument fails.

■■ Plaintiff next contends that the policies' "penal act" exclusions preclude coverage and obviate any duty to defend in this case. According to plaintiff, the false imprisonment claim alleges facts that also would support defendants' conviction of the felony of custodial interference. As plaintiff explains, "[i]t is a crime in Oregon to knowingly take, entice, or keep a person from his or her lawful custodian, or in violation of a valid joint custody order * * *. See ORS 163.245; ORS 163.257." Defendants respond that the elements of false imprisonment do not match the elements of the crime of custodial interference. Defendants note that false imprisonment does not require that the defendant must have known that he or she had no legal right to interfere with the victim's lawful custody, whereas such a determination is essential to a conviction for custodial interference. See ORS 163.245. We agree. Defendants could be liable for false imprisonment, as the claim is pleaded, without having committed the crime of custodial interference. Therefore, the penal act exclusions do not apply.[4]

Finally, plaintiff argues that public policy precludes a duty to defend the false imprisonment claim. That argument depends on the premise, which we have already rejected, that the claim necessarily alleges that defendants

---

[3] Carr did allege that defendants confined the children by means of "physical barriers and by authority and intimidation." However, that allegation merely described the means of confinement; it did not compel an inference that defendants intended to cause the injuries for which damages were claimed. The evidence could show, consistent with the allegations of the complaint, that defendants believed that the confinement actually would *protect* the children from harm. See *McNeff v. Heider*, 216 Or 583, 588, 337 P2d 819 (1959) (a defendant may be held liable for compensatory damages resulting from false imprisonment regardless of whether motive is good or evil).

[4] The parties appear to understand the false imprisonment claim to plead, by incorporated reference, that defendants knew or should have known that Carr had custody or access rights to the children. That is not an accurate reading of the complaint. Although other claims in the complaint included such an allegation, it was *not* realleged in the false imprisonment claim.

intended to harm the children. *See, e.g., Isenhart v. General Casualty Co.*, 233 Or 49, 52 n 2, 377 P2d 26 (1962) (public policy prohibits, irrespective of insuring agreement, indemnity for "intentionally inflicted injuries"). Because, as the claim is pleaded, defendants could be liable for damages resulting from false imprisonment regardless of whether they intended to harm the children, the prohibition on which plaintiff relies is inapplicable.

Affirmed.