**THE HOME INDEMNITY COMPANY, a New Hampshire corporation; Wausau Business Insurance Company; Wausau Underwriters Insurance Company; and Employers Insurance of Wausau, a Mutual Company, Wisconsin corporations; and California Insurance Company, a California corporation, Plaintiffs,**

v.

**STIMSON LUMBER COMPANY, an Oregon corporation; National Surety Corporation, an Illinois corporation; Northwestern Pacific Indemnity Company, an Oregon corporation; American Home Assurance Company, a New York corporation; the Insurance Company of the State of Pennsylvania, a Pennsylvania corporation; and National Union Fire Insurance Company of Pittsburgh, a Pennsylvania corporation, Defendants.**

No. CIV.01–514–HU.

United States District Court,
D. Oregon.

Dec. 19, 2001.

Dianne K. Dailey, Beth Skillern, Sheila Potter, Bullivant Houser Bailey, P.C., Portland, OR, for Plaintiffs The Home Indemnity Company and California Insurance Company.

Jan K. Kitchel, Becky Johnson, Schwabe, Williamson & Wyatt, P.C., Portland, OR, for Plaintiffs Wausau Business Insurance Company, Wausau Underwriters Insurance Company, and Employers Insurance of Wausau.

Edwin C. Perry, Tonkon Torp LLP, Portland, OR, James A. Riddle, Thelen Reid & Priest LLP, San Francisco, CA, for Defendant Stimson Lumber Company.

William G. Earle, Alan Gladstone, Abbott, Davis, Rothwell, Mullin & Earle, P.C., Portland, OR, Paul A. Tenner, Caron, Constants & Wilson, Glendale, CA, for Defendant National Surety Corporation.

Curt H. Feig, Cozen O'Connor, Seattle, WA, for Defendant Northwestern Pacific Indemnity Company.

Michael A. Lehner, Lehner, Mitchell, Rodriguez & Sears, Portland, OR, for Defendant American National Fire Insurance Company.

Eric J. Neiman, Vivian Raits Solomon, Tooze Duden Creamer Frank & Hutchison, Portland, OR, Pamela M. Andrews, Stephen G. Skinner, Johnson Christie Andrews & Skinner, P.S., Seattle, WA, for Defendants American Home Assurance Corporation, The Insurance Company of the State of Pennsylvania, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

### ORDER ADOPTING FINDINGS AND RECOMMENDATION

HAGGERTY, District Judge.

Magistrate Judge Hubel issued his Findings and Recommendation on October 18, 2001, in the above entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell*

*Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Defendant Stimson has timely filed objections. I have, therefore, given *de novo* review of Magistrate Judge Hubel's rulings.

I find no error. Accordingly, I ADOPT Magistrate Judge Hubel's Findings and Recommendation filed on October 18, 2001, in its entirety.

IT IS SO ORDERED.

### FINDINGS & RECOMMENDATION

HUBEL, United States Magistrate Judge.

Plaintiffs The Home Indemnity Company, Wausau Business Insurance Company, Wausau Underwriters Insurance Company, Employers Insurance of Wausau, and California Insurance Company, bring this action against Stimson Lumber Company and several other insurance companies. Plaintiffs issued contracts of primary liability insurance to Stimson. Defendants, other than Stimson ("the excess insurers"), issued contracts of excess liability insurance to Stimson.

Plaintiffs seek a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, of plaintiffs' obligations to Stimson in connection with Stimson's claims for insurance coverage under the insurance contracts. Plaintiffs additionally seek a declaration of the excess insurers' obligations to Stimson and to plaintiffs with regard to payment of any damages under contracts of insurance issued by plaintiffs or the excess insurers.

Stimson moves to transfer the action to the Northern District of California. Alternatively, Stimson moves to stay the action pending resolution of underlying litigation against Stimson. I recommend that the motion to transfer and the motion to stay be denied.

### BACKGROUND

As pleaded in the First Amended Complaint, plaintiffs, the excess insurers, and other insurers, provided certain liability insurance to Stimson from 1980 to the present. Plaintiffs and the excess insurers, through their Oregon offices or using their Oregon insurance agents and brokers, negotiated with Stimson in Oregon for the issuance of various written contracts of liability insurance. These contracts were issued and performed in Oregon.

Stimson manufactures a reformulated exterior hardboard siding and other wood products, including the Forestex Series 400 and 500 hardboard siding products. Upon information and belief, plaintiffs contend that Stimson manufactured the Forestex siding ("the siding"), from 1986 until on or about June 1997, at its plant in Oregon. Stimson sold these products throughout the western United States.

Stimson notified plaintiffs and some or all of the excess insurers of various suits and claims against Stimson arising out of the use of the siding ("the siding claims"). Stimson maintains that the insurers are obligated to defend or indemnify Stimson in connection with the siding claims.

Stimson represents that presently, there are eighteen siding claims, all but one of which is pending in California. The other is pending in Washington and was recently certified as a class action.

Plaintiffs have investigated the siding claims and have agreed to defend Stimson as to certain of those claims, subject to a reservation of rights. Stimson contends that plaintiffs are obligated to defend or indemnify it more broadly than plaintiffs have agreed to do with respect to the

siding claims. The excess insurers provided certain excess liability insurance to Stimson, and that excess liability insurance may be reached as a result of the payment of sums by or on behalf of Stimson in connection with the siding claims.

Based on these facts, plaintiffs bring two claims: (1) a declaratory judgment claim against Stimson in which plaintiffs seek to clarify the limits of their coverage of the siding claims; and (2) a declaratory judgment claim against the excess insurers seeking a declaration of the excess insurers' obligations to Stimson regarding the payment of any sums by or on behalf of Stimson in connection with the siding claims, and seeking a declaration of the proper allocation among Stimson's primary and excess insurers and between those insurers and Stimson, of liability for any sums for which Stimson may be obligated in connection with the siding claims.

## DISCUSSION

### I. Jurisdiction

Although no party has raised an issue regarding this Court's jurisdiction to entertain these claims brought under the Declaratory Judgment Act, and I am not required to consider the question sua sponte, the better practice is to make an express determination as to jurisdiction. *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1226–27 (9th Cir.1998) (en banc) (preferable practice is for district court to expressly consider whether a properly filed declaratory judgment action should be entertained and to record its reasons for doing so).

As explained in *Dizol:*

The Declaratory Judgment Act embraces both constitutional and prudential concerns. A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution.... It must

also fulfill statutory jurisdictional prerequisites.... If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate. This determination is discretionary, for the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority.

*Id.* at 1222–23 (citations, footnote, and internal quotation omitted). As to the first requirement, the Ninth Circuit has "consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Id.* at 1222 n. 2. A case or controversy is found when a insurer brings a declaratory judgment action regarding its duty to defend and indemnify. *See, e.g., American States Ins. Co. v. Kearns,* 15 F.3d 142, 144 (9th Cir.1994). Such is the case here.

Statutory jurisdictional requirements are also met because there is complete diversity between the parties and the amount in controversy is more than $75,000. Thus, statutory jurisdiction is proper under 28 U.S.C. § 1332(a).

In determining whether entertaining the action is appropriate, the factors from *Brillhart v. Excess Insurance Company of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), "remain the philosophic touchstone for the district court." *Dizol,* 133 F.3d at 1220. They are: (1) avoiding needless determinations of state law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. *Id.* In addition, other considerations may be relevant: (1) whether the declaratory action will settle all aspects of the controversy; (2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at

issue; (3) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; (4) whether the use of a declaratory action will result in entanglement between the federal and state court systems; (5) the convenience of the parties; and (6) the availability and relative convenience of other remedies. *Id.* at 1225 n. 5.

While the presence of "parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed" results in a "presumption that the entire suit should be heard in state court[,]" "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id.* at 1225. "The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief." *Id.* Accordingly, nothing prevents an insurer "from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." *Id.*

### A. Application of *Brillhart* Factors

#### 1. Determination of State Law Issues

Several of the asserted coverage defenses will have little or no impact on any of the issues likely to arise in the underlying siding claims. For example, determining plaintiffs' obligations as to (1) costs incurred by Stimson before Stimson notified plaintiffs of a claim; (2) when property damage occurred vis a vis each insurer's respective policy period; (3) whether damage was done to Stimson's own product; (4) damages associated with Stimson's work or operations; (5) whether damage resulted from a recall or withdrawal of the product from the market; (6) whether a claim is a "suit" as defined in the various insurance policies; (7) whether a particular loss was in progress when

Stimson obtained liability insurance, and (8) whether Stimson knew of certain risks when it obtained liability insurance, all have little or no overlap with the issues in the underlying siding claims litigation.

Nonetheless, some of the issues determined here could have significant overlap with certain issues likely to be relevant in the siding claims. For example, determining the cause of the damage and whether the cause is related to an occurrence, accident, or fortuitous event, or, on the other hand, whether Stimson expected or intended any of the property damage, are significant issues which could be determined in this case before being resolved as part of the underlying litigation. Similarly, determinations as to the type of damage sustained, whether a breach of warranty occurred, and whether the cause of the damage was as a result of a defect in Stimson's product or work, would potentially overlap with questions raised in the underlying claims.

Overall, however, of the issues presented by the asserted coverage defenses, most of them will have little or no impact on issues likely to be seen in the underlying claims.

#### 2. Discouraging Forum Shopping

While the underlying claims are being litigated predominantly in California, they are not consolidated cases, but are pending in separate courts throughout that state, as well as in Washington. Most importantly, plaintiffs here are not parties to any of the underlying claims. Thus, the coverage issues that are presented in this action have not been raised in any other forum. Accordingly, I do not view plaintiffs' declaratory relief action here as forum shopping.

### 3. Avoiding Duplicative Litigation

In this case, I view this factor as equal to the first factor in which the overlap between state law issues and issues present in the federal declaratory relief action is examined. Based on the discussion in connection with that factor, it is apparent that while some of the issues in the litigation in this case may overlap with some of the issues in the underlying siding claims, most of the issues do not duplicate those likely to arise in the underlying claims.

As to the other factors relevant under *Brillhart*, while this declaratory judgment action will not settle all aspects of the controversy, it will serve a useful purpose in clarifying the legal relations at issue. As discussed further below, because under Oregon law, there is no estoppel effect to the factual determinations made here upon the same factual issue in the underlying claims, I cannot conclude that the declaratory action is being sought to obtain a "res judicata" advantage. Further, I do not see that the use of this declaratory action will result in entanglement between the federal and state court systems.

Based on the analysis of the *Brillhart* factors, I exercise my discretion in favor of exercising jurisdiction.

### II. Motion to Transfer

■ Stimson moves to transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404 which governs motions to transfer venue. The statute provides that

[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The decision whether to transfer venue lies in the discretion of the district court. 28 U.S.C. § 1404; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000) (under section 1404(a), "the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.") (internal quotation omitted).

In determining proper venue, the court considers both public and private factors. *Creative Tech., Ltd., v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir.1995). Private factors

include ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; the possibility of viewing subject premises; and other factors contributing to an expeditious and inexpensive trial.

. . . . .

[Public] factors include administrative difficulties flowing from court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems.

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1093, 1094 (9th Cir.1998).

■ Generally, defendants "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Stimson notes that none of the siding claims are venued in Oregon, and all but one is in California. Additionally, none of the allegedly damaged homes, condominiums, or apartments are in Oregon. Stimson contends that virtually all of the key witnesses, including Stimson's defense counsel and plaintiffs' claims administrators, are in California. Stimson indicates

that the vast majority of the tens of thousands of pertinent documents are in California. Finally, Stimson states, all parties are subject to the jurisdiction of the Northern District of California and there is "no reason why the parties, witnesses and this Court should be inconvenienced in litigating a coverage dispute that has almost no connection with this state (other than the fact that Stimson is an Oregon corporation)." Stimson's Memo. at p. 2.

In response, plaintiffs note that the underlying claims against Stimson are not confined to California. Notably, plaintiffs point to *Gardner v. Stimson Lumber Co.*, No. 00–2–17633, pending in King County Superior Court in Washington, which was certified as a class action on June 8, 2001, The class is defined as "all persons in the states of Washington, Oregon, California, Idaho, Utah, Colorado, or Hawaii who own or have owned buildings clad with Stimson Series 400 or Series 500 hardboard siding ('Forestex hardboard siding') installed after January 1, 1985." Exh. A to Pltfs' Memo. in Opp. at p. 1.

Plaintiffs note that in light of the class certification order in *Gardner,* Stimson is hard pressed to argue that California remains the venue with the most numerous and important contacts. American National Fire Insurance Company notes that because consumer complaints are not confined to California, selecting California as the appropriate forum to decide insurance coverage would be arbitrary rather than convenient.

Plaintiffs also suggest that Stimson's transfer argument focuses on the wrong set of facts. Plaintiffs argue that the issue in the present action is whether there is insurance coverage for the damages alleged in the siding claims which will be resolved by the court's examination of evidence and case law pertaining to (1) the knowledge of Stimson's management about the quality of its siding or potential claims pertaining to that siding at the time it applied for insurance; (2) the information Stimson's management provided to the insurance agents or brokers at the time it applied for insurance; (3) Stimson's management's notice of the underlying claims and Stimson's management's notice to its insurers of those underlying claims; and (4) the interpretation and application of the insurance policies issued to Stimson.

Thus, for example, as American Fire Insurance Company notes, if there is an ambiguity in interpreting the insurance contracts at issue, testimony of those involved in buying and selling the policies may be important. Because the policies at issue here were all issued by Oregon agents to an Oregon company, American National Fire Insurance Company argues that the key witnesses are in Oregon. American National Fire Insurance Company also notes that Oregon law will apply to this dispute and that documents and witnesses pertinent to coverage for particular claims are present in Oregon because presumably, Stimson keeps records concerning warranty claims, product complaints, manufacturing methods, alteration of manufacturing methods, and product design and re-design, at its headquarters in Oregon.

Plaintiffs conclude that the "operative facts" relevant to the above-referenced issues all took place in Oregon. By Stimson's own counsel's admission at a May 24, 2001 status conference, Stimson's management is located in Portland and the plant where the siding was manufactured is located in Gaston, Oregon. The insurance policies all were issued in Oregon using Oregon insurance agents or brokers.[1]

---

1. In a separate memorandum filed by Wausau Business Insurance Company, Wausau Underwriters Insurance Company, and Employers Insurance of Wausau (referred to collectively as "Wausau"), Wausau incorporates the

Plaintiffs emphasize that they are not arguing that the underlying siding claim lawsuits should be litigated somewhere other than where the damage allegedly has occurred to the underlying claimants, but that the instant action is a dispute about coverage under insurance policies written in Oregon to an Oregon company and which should be heard in Oregon.

### A. Private Factors

### 1. Access to Proof/Location of Operative Facts

As discussed above in the section on jurisdiction, many of the issues sought to be adjudicated in this action do not overlap with those asserted in the underlying siding claims being litigated elsewhere. A large portion of the evidence relevant to this coverage dispute is located in Oregon. As noted, however, there are a few issues which do overlap with those in the underlying siding claims. Evidence relevant to these claims may be at the sites forming the basis of the siding claims or with experts whose location is unknown. To the extent that the evidence in California, or elsewhere, is documentary, its location is largely irrelevant because it would need to be copied and delivered to plaintiffs in discovery or produced at trial regardless of its location. Furthermore, to the extent some on-site visits may be required, California is, relatively speaking, close to Oregon. On balance, this factor weighs in favor of retaining the action in Oregon as more of the relevant evidence is located here and some of the evidence outside of Oregon is documentary.

### 2. Convenience of Parties and Witnesses

Although Stimson is an Oregon company with its headquarters here, it argues that California is the more convenient forum because plaintiffs' claims adjustors, described by Stimson as plaintiffs' most knowledgeable witnesses regarding the underlying lawsuits, are in California. Stimson also argues that California is more convenient because Stimson's defense counsel for the siding claims is in California and it would be extremely burdensome for such defense counsel [2] to assist Stimson in providing information relevant to the coverage dispute if the coverage action

---

memorandum submitted jointly by all plaintiffs, but adds the following facts regarding the issuance of its policies: Wausau negotiated insurance contracts for Stimson from 1980 until 2000 with a six-year gap from 1991 to 1997 when Wausau did not issue any insurance contracts to Stimson. The negotiations and writing of all insurance contracts between Wausau and Stimson occurred in Oregon. Underwriters at the local Oregon Wausau office were contacted by local Oregon insurance brokers to negotiate the terms and conditions of the contracts for Stimson. After the initial negotiations, the terms and conditions of the insurance contracts were finalized in Oregon and the local Oregon insurance broker presented the terms and conditions to Stimson employees for approval. Because Stimson's headquarters are in Oregon, Wausau understands that the Stimson employees who reviewed and accepted the terms and conditions were located in Oregon. Once the

terms and conditions were accepted by Stimson, underwriters from the local Oregon Wausau office sent the information to the Wausau home office for finalizing and forwarding to Stimson. Wausau's home office was responsible only for actually typing up the insurance contract, based on the instructions from the local Oregon Wausau office, and for mailing the insurance contract to Stimson or Wausau's representative.

**2.** From the context of the discussion in Stimson's memorandum, it appears that the defense counsel Stimson refers to here is not defense counsel in the coverage action, but defense counsel in the siding claims litigation. If this is defense counsel hired by the insurers to defend Stimson in the siding claims, that counsel cannot represent Stimson in the coverage case, but rather, is limited to providing Stimson the same information as provided to coverage counsel.

remained in Oregon. Additionally, Stimson maintains that most of the key witnesses are in California, including experts hired to determine the cause, nature, and extent of the alleged damage for which coverage applies. The experts may or may not be close to the Northern District of California court as their location within California is unknown (if indeed they are from California).

As plaintiffs note, interpretation of the scope and content of insurance policy language is a matter of law for the court, not for the jury. *Farmers Ins. Co. of Or. v. Munson*, 145 Or.App. 512, 519, 930 P.2d 878, 882 (1996). For those factual issues that require determination prior to the court interpreting the policy, or if there are ambiguities in the policy and extrinsic evidence is necessary to interpret the policy at trial, most of the relevant witnesses will be the Oregon insurance agents and brokers who issued the insurance policies, Stimson's management, including those who provided information to obtain the insurance policies and the insurance claims, and Stimson's manufacturing personnel. All of these persons are located in Oregon.

For the factual issues that do overlap with those in the underlying claims, I agree with Stimson that some of the relevant witnesses reside in California and thus, they would not be subject to the compulsory process of this court. Stimson points to the claims adjustors, the individual homeowners and their experts, and Stimson's defense counsel (see footnote two), in the underlying actions as crucial witnesses outside of this court's subpoena power.

The fact remains, however, that many witnesses, as described above, are in Oregon. A mere shifting of inconvenience does not satisfy Stimson's burden in seeking a change in venue. *Decker Coal*, 805 F.2d at 843 (upholding denial of transfer where liability witnesses were in one forum but damages witnesses were in another because the "transfer would merely shift rather than eliminate the inconvenience."). Thus, because Stimson shows only a shift of inconvenience and there are some non-party Oregon witnesses who would be outside of the compulsory process of a California court, this factors weighs against transfer.

**B. Public Factors**

**1. Local Interest**

Stimson argues that the controversy is not local to Oregon because the parties most affected by the products and activities that plaintiffs promised to insure are the plaintiffs in the underlying siding claims. Accordingly, Stimson argues, there is no justification for requiring this court and the citizens of Oregon to bear the costs that plaintiffs' action will entail, or require the citizens of Oregon to devote time as jurors, to resolve a dispute brought by an out-of-state insurance company over its responsibility to insure events occurring in California.

Plaintiffs argue that Stimson's argument again misses the focus of this action which is insurance coverage. As plaintiffs note, the controversy in this case, albeit with some factual overlap with the underlying cases, concerns insurance policies issued in Oregon, by Oregon insurance agents and brokers, to an Oregon corporation for a product made in Oregon. Plaintiffs argue that Oregon citizens have a great interest in how such insurance policies are interpreted and applied. As noted in footnote four below, Oregon law will apply. Additionally, plaintiffs contend, California's interest is minimal because even those California citizens with a case pending against Stimson have only a minor interest in the disposition of the coverage case.

I agree with plaintiffs. Even noting the overlapping factual issues between the coverage case and the underlying claims, the coverage case ultimately will address the insurance policies which were issued in Oregon by Oregon personnel to an Oregon company for an Oregon product. Oregon citizens maintain a strong interest in such a dispute.

## 2. Court Congestion

Plaintiffs note that the median time elapsing in a civil case from filing to trial in the Northern District of California is twenty-five months compared with fifteen months in Oregon. Exh. B. to Pltfs' Memo. in Opp. at pp. 2–3; Exh. C. to Pltf's Memo. in Opp. at p. 2. Additionally, plaintiffs note that the Northern District of California carries 273 pending civil cases over three years old while District of Oregon carries only 63. Exh. B. to Pltfs' Memo. in Opp. at pp. 2–3. As a result, plaintiffs argue, it is more expeditious to keep the case here in Oregon.

Stimson responds that the mere possibility that a trial may be held earlier in the original court does not justify a denial of a transfer when the transfer is otherwise supported by the convenience of the parties and the witnesses.

This factor weighs in favor of retaining the action in Oregon. Plaintiffs' statistical evidence indicates that the Northern District of California is more congested than the District of Oregon. Stimson's argument in response carries little weight when the transfer is not supported by the convenience of all parties and witnesses.

## C. Plaintiff's Choice of Forum

 Generally, a plaintiff's choice of forum is given considerable weight in a section 1404(a) analysis. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987). However, a plaintiff's choice of forum carries less weight when the chosen forum is not plain-

tiff's home. *Findley Adhesives, Inc. v. Williams,* 751 F.Supp. 184, 186 (D.Or. 1990). Nonetheless, the plaintiff's choice of forum is not to be dismissed altogether. *See Murray v. British Broad. Corp.,* 81 F.3d 287, 289 (2d Cir.1996) (in motion based on forum non conveniens involving foreign plaintiff, plaintiff's choice of forum entitled to less deference but some weight still given to that choice); *see also Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 101 (2d Cir.2000) ("While any plaintiff's selection of a forum is entitled to deference, that deference increases as the plaintiff's ties to the forum increase"), *cert. denied,* 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001); *Miller v. Consolidated Rail Corp.,* 196 F.R.D. 22, 25–26 (E.D.Pa. 2000) (although court was not plaintiff's home forum, plaintiff and his case had "more than a superficial link" to the Pennsylvania court, in large part because the defendant's headquarters were located in Pennsylvania, and plaintiff's choice was therefore not given any reduced deference).

Plaintiffs contend that their selection as Oregon as the forum for this dispute is entitled to deference because it is not driven by forum shopping, but rather by logic and convenience. Plaintiffs note that the case is brought by three insurance companies with no single home forum and that Stimson's home forum is both logical and convenient for a declaratory judgment action applying Oregon law to determine obligations to an Oregon corporation arising out of insurance policies issued in Oregon. Clearly it is difficult to argue that Oregon, home to Stimson, is a manifestly unfair forum for it to be required to conduct this litigation.

I agree with plaintiffs. While plaintiffs' choice of Oregon may not be entitled to substantial deference given that none of the plaintiffs are headquartered here,

plaintiffs' choice is still accorded some weight. Plaintiffs' choice makes sense given that Stimson is located here and the ultimate issues concern insurance coverage for policies issued in Oregon to an Oregon company.

Based on an analysis of private and public factors, and giving plaintiffs' choice of forum some consideration, I conclude that Stimson has not met its burden of demonstrating that this case may be more conveniently tried in the Northern District of California. Thus, I recommend that the motion to transfer be denied.

### III. Motion to Stay

 Stimson seeks to stay the case while the underlying claims giving rise to the coverage issues are being actively litigated. Stimson argues that without a stay, plaintiffs' pursuit of the relief sought in this action will effectively undercut Stimson's defense of the underlying actions and align the insurers with Stimson's adversaries in the underlying claims. In support of its argument, Stimson relies on *Montrose Chemical Corporation of California v. Superior Court*, 6 Cal.4th 287, 861 P.2d 1153, 24 Cal.Rptr.2d 467 (1993) (*Montrose I*), and *North Pacific Insurance Company v. Wilson's Distributing Service, Inc.*, 138 Or.App. 166, 908 P.2d 827 (1995).

In *Montrose I*, the insured brought an action against its insurers, seeking a declaratory judgment regarding the insurers' duty to defend the insured in an underlying third-party lawsuit. *Montrose I*, 6 Cal.4th at 291, 861 P.2d at 1154, 24 Cal. Rptr.2d at 468. The parties disputed the

"proper use of extrinsic evidence in determining the scope of the defense duty[.]" *Id.*, 861 P.2d at 1154–55, 24 Cal.Rptr.2d at 468–69. The court held that "evidence extrinsic to the underlying complaint can defeat as well as generate a defense duty[.]" *Id.*[3] The court then concluded that the insured had made a prima facie showing that the complaint in the underlying action fell within the coverage of the various policies. *Id.* at 304–05, 24 Cal. Rptr.2d 467, 861 P.2d 1153, 861 P.2d at 1163–64, 24 Cal.Rptr.2d at 477–78.

While the case primarily concerned the determination of the insureds' duty to defend, the court anticipated the next issue and commented on the timing of the resolution of indemnity issues in a related coverage case. The court explained that a stay of a declaratory relief action is "appropriate when the coverage question turns on facts to be litigated in the underlying action" because otherwise, "inconsistent factual determinations" could prejudice the insured. *Id.* at 301, 24 Cal. Rptr.2d at 476, 861 P.2d at 1162. As an example, the *Montrose I* court noted that when a third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, "the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious." *Id.*

In contrast, the court noted, when "the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." *Id.* As an

---

**3.** Although, as explained further herein, the duty to defend is presently not an issue in this case, I note that Oregon law differs from California law in allowing extrinsic evidence in assessing the duty to defend. *See, e.g., Mutual of Enumclaw Ins. Co. v. Gutman,* 172 Or.App. 528, 531, 21 P.3d 101, 103

(2001) ("Whether an insurer has a duty to defend presents a question of law, which is determined by comparing the terms of the insurance policy with the allegations of the complaint against the insured.") (internal quotation omitted).

example, the court cited a case where the "question whether the owner had granted permission for the driver's use of the car was irrelevant to the third party's personal injury claim, and could properly be determined in the declaratory relief action independently of the timing of the third party suit." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Flynt,* 17 Cal.App.3d 538, 95 Cal.Rptr. 296 (1971)).

After the *Montrose I* decision, the California Court of Appeals considered, in a related case, whether another declaratory relief action filed by Montrose Chemical Corporation, could be set for trial before the third-party suits were resolved. *Montrose Chem. Corp. v. Superior Court,* 25 Cal.App.4th 902, 31 Cal.Rptr.2d 38 (1994) (*Montrose II*). The court indicated that based on the relevant portion of *Montrose I,* the question before it was "whether the coverage questions [were] logically unrelated, (that is, irrelevant) to the issues of consequence in the contamination cases so that they could be determined in the declaratory relief action without prejudice to Montrose in the underlying actions." *Id.* at 908, 31 Cal. Rptr.2d at 42.

The court noted that when courts talk about "prejudice to the insured from concurrent litigation of the declaratory relief and third party actions," courts are saying that "the insurer must not be permitted to join forces with the plaintiffs in the underlying actions as a means to defeat coverage." *Id.;* 31 Cal.Rptr.2d at 43. Additionally, the court noted that another prejudice is seen when the "insured is compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with carriers." *Id.* Finally, the court noted, "there is the collateral estoppel issue." *Id.* As described by the *Montrose II* court,

[i]f the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party, action, notwithstanding that any fact found in the insured's favor could not be used to its advantage.

*Id.*

The court then noted that although it had emphasized the potential prejudice to the insured, "the trial court must [also] consider the burden on the carriers." *Id.* at 910, 31 Cal.Rptr.2d at 43. The court noted that given their duty to defend, the carriers pay for defense costs and "must continue to pay until the underlying actions are resolved unless, of course, they are allowed to litigate the indemnity issues." *Id.* The court noted that in a case where there is no potential conflict between the coverage issues and those in the third-party action, the carrier may "obtain an early trial date in the coverage action and, if it wins, that is the end of its duty to defend." *Id.* However, the court noted, where that cannot be done, "the carrier gets to keep paying and paying and paying." *Id.* Thus, the court concluded, the "trial court should not hesitate to fashion orders which attempt to balance these conflicting concerns." *Id.*

In the Oregon case, the liability insurer commenced a declaratory judgment action seeking a determination that it had no duty to defend or indemnify its insured in an underlying action brought by a third party against the insured for soil and groundwater contamination to the third party's property. *North Pac. Ins. Co.,* 138 Or.App. at 169, 908 P.2d at 829. The insurance policy at issue excluded coverage for the discharge of contaminants or pollutants unless the discharge was sudden and accidental. *Id.* at 171, 908 P.2d at 830. Because, under the allegations that were made in the underlying case, evidence that

contaminants were released suddenly and accidently on some occasions would be admissible, "plaintiff is and was obligated to defend, unless it was entitled to develop facts in this action for declaratory relief, filed before the underlying tort action was decided, to show that it had no duty to indemnify and, therefore, no duty to defend." *Id.*

The court framed the issue as "whether the duty to defend may be negated by showing lack of coverage by evidence adduced for the first time in a declaratory judgment action commenced by the insurer before the underlying tort action has been concluded." *Id.* at 173, 908 P.2d at 831. The court concluded that the trial court erred in denying the insured's motions to stay until resolution of the underlying case, both as to the duty to defend and the duty to indemnify. As to the duty to defend, the court noted that unless facts showing no duty to defend have been previously and "uncontrovertibly established" in a separate proceeding, it is an abuse of discretion to deny a motion to stay a declaratory judgment action by the insurer regarding the insurer's duty to defend. *Id.* at 174, 908 P.2d at 832.

As to the duty to indemnify, a duty independent of the duty to defend, the court held that the motion to stay should have been granted. The court explained:

> What plaintiff has attempted to do here is to litigate, at least in part, the Wilsons' liability to C–CE in the underlying tort action, putting the Wilsons in the conflictive position of being required to abandon their denial of liability in that action in order to come within the exception to the policy exclusion. They were required to come forward in this proceeding with evidence that they caused some of the pollution of C–CE's property but that the pollution was the result of sudden and accidental releases of the contaminants claimed by C–CE to

have originated on the Wilsons' property. An insurer may not put its insured in that position. Given plaintiff's obligation to defend, there can be no detriment to it to abide the final outcome of the underlying action to determine whether it is obligated to indemnify. The trial court erred in denying the Wilsons' motions to stay this proceeding as it relates to plaintiff's duty to indemnify and in entering summary judgment for plaintiff.

*Id.* at 175, 908 P.2d at 832.

Stimson argues that a number of plaintiffs' alleged coverage defenses arise from the same operative facts at issue in the siding claims and are therefore, so "logically related" to the "issues of consequence" in the underlying actions that this action must be stayed. For example, Stimson argues, plaintiffs' coverage defenses impact at least the following three issues: (1) did Stimson expect or intend the property damage alleged by the plaintiffs in the underlying cases such that those losses were non-fortuitous; (2) were the damages allegedly sustained by the underlying plaintiffs caused by the "intentional or fraudulent" conduct of Stimson; and (3) was "deterioration" of the siding itself a complete or partial cause of the underlying plaintiffs' alleged damages.

Plaintiffs read *North Pacific* to create two relevant questions in the stay analysis: (1) whether the insurer could develop facts in a declaratory judgment action, commenced before the underlying tort action is concluded, that would negate the insurer's duty to defend; and (2) does the declaratory judgment action force an insured to prematurely litigate the insured's potential liability in the underlying tort claims and require the insured to take inconsistent positions? I agree with plaintiffs that this is a fair reading of *North Pacific*.

As to the first question, the operative Complaint in the case seeks a declaration

concerning plaintiffs' duty to defend as well as to indemnify. First Am. Compl. at ¶ 22 (plaintiffs "contend they have no duty to defend and/or indemnify Stimson"). However, based on the insurers' representations through counsel during oral argument, there is no apparent challenge to the duty to defend any of the current siding claims. Any challenges by plaintiffs to the duty to defend any concluded litigation causes no detriment to Stimson because, if the litigation is concluded, the prejudices noted by the *Montrose II* court are not implicated. As a result, the duty to defend is not presently an issue in this case.

As to the second inquiry under *North Pacific*, plaintiffs argue that Stimson will not be forced to take an inconsistent position between this action and the underlying siding claims. Plaintiffs indicate that they seek a determination of what claims are excluded from coverage, not a declaration of whether Stimson committed the torts alleged in the underlying complaint. Plaintiffs state that they have never asserted, for example, that Stimson expected or intended the damage or engaged in fraudulent conduct, but that they have simply reiterated the claims by the underlying plaintiffs in the siding claims in an attempt to accurately frame the coverage issues. Accordingly, plaintiffs argue, the factual determinations necessary for the adjudication of the declaratory judgment and for the underlying siding claims are different and will not force Stimson to take inconsistent positions in the two cases.

Plaintiffs also cite to a number of cases in which a court has adjudicated a declaratory judgment regarding coverage by an insurer before the conclusion of the underlying action against the insured. *E.g., United States Fid. & Guar. Co. v. Star Tech., Inc.,* 935 F.Supp. 1110 (D.Or.1996) (interpreting insurance policy in declaratory judgment action as to insurer's duty to defend underlying patent infringement action against insured); *Gutman,* 172 Or. App. 528, 21 P.3d 101 (interpreting insurance policy in declaratory judgment action as to insurer's duty to defend underlying tort claim against insured); *Drake v. Mutual of Enumclaw Ins. Co.,* 167 Or.App. 475, 1 P.3d 1065 (2000) (same).

While plaintiffs correctly note that these courts resolved the issues in a declaratory action while an underlying action was pending, none of the cases address a motion to stay or discuss the potential for overlapping factual issues between the underlying claim and the coverage issues in the declaratory relief action. Thus, these cases bear little relevance to the instant motion.

Neither party cites *Ferguson v. Birmingham Fire Ins. Co.,* 254 Or. 496, 460 P.2d 342 (1969). There, the Oregon Supreme Court found a duty to defend when the complaint alleged a willful trespass on the part of the insured, but recovery could be had against the insured, without amendment of the complaint, for non-willful trespass. *Id.* at 504–07, 460 P.2d at 346–47. Although the policy excluded coverage for willful conduct of the insured, there was a possibility of liability being imposed upon the insured for conduct covered by the policy, triggering the duty to defend. *Id.* Additionally, the court held that while the insured's insistence that the insurer undertake the defense without any reservation of rights relating to coverage constituted a breach of contract, this did not preclude the insured from recovering the judgment paid and the cost of the defense if the subsequent coverage question was resolved in favor of the insured. *Id.* at 512, 460 P.2d at 349.

As part of analyzing these issues, the court noted that if an insurer defends an action against the insured "in the face of the insured's refusal to accede to [the] insurer's request for a reservation of

rights," the insurer "waives or is estopped" to assert the defense of non-coverage. *Id.* at 508, 460 P.2d at 348. On the other hand, if the insurer rejects the tender of the defense, thus preserving its right to question coverage, it "loses the benefits that accrue from being represented by its own counsel[,]" and, if it later loses on the coverage question, it must pay the judgment and the costs of defense. *Id.* As described by the court, "the insurer is forced to choose between two alternatives either of which exposes it to a possible detriment or loss." *Id.*

The court further noted that the justification for imposing this dilemma on insurers arose out of conflict of interest situations between insurers and insureds. The court stated:

> Where there is a conflict of interest between the insurer and insured and the judgment in the action against the insured can be relied upon as an estoppel by judgment in a subsequent action on the issue of coverage, the control of the action by the insurer could adversely affect the insured if the judgment was based upon conduct of the insured not falling within the coverage of the policy.

Likewise, the insurer could be adversely affected by a judgment based upon conduct for which there is coverage. But we see no reason for applying the rule of estoppel by judgment in such cases. The judgment should operate as an estoppel only where the interests of the insurer and insured in defending the original action are identical—not where there is a conflict of interests. If the judgment in the original action is not binding upon the insurer or insured in a subsequent action on the issue of coverage, there would be no conflict of interests between the insurer and the insured in the sense that the insurer could gain any advantage in the original action which would accrue to it in a subsequent action in which coverage is in issue.

*Id.* at 509–11, 460 P.2d at 348–49 (footnote omitted).

Based on *Birmingham Fire*, it is clear that any issues of fact determined in the underlying claims would have no estoppel effect on the same issues in the coverage case because there is no dispute that plaintiffs are defending the underlying cases under a reservation of rights, exposing a conflict of interest.[4] I found no Oregon

---

4. In resolving this declaratory relief coverage action, it appears that Oregon law would apply. Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001). In deciding choice of law issues in contract actions, Oregon applies the law of the state which has the most significant relationship to the parties and to the transaction. *Lilienthal v. Kaufman*, 239 Or. 1, 10–11, 395 P.2d 543, 547 (1964); *see also Young v. Mobil Oil Corp.*, 85 Or.App. 64, 68, 735 P.2d 654, 656 (1987) (noting that *Lilienthal* "adopted the principle that the law applied should be that of the state having the most significant relationship to the parties and the transaction."). In a 1994 case, the Oregon Court of Appeals held that Oregon law applied to the issue of whether there was liability insurance coverage for soil and groundwater contamination at a wood treatment plant in California. *St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 126 Or.App. 689, 870 P.2d 260, *modified*, 128 Or.App. 234, 875 P.2d 537 (1994), *rev'd in part on other grounds*, 324 Or. 184, 923 P.2d 1200 (1996). The court held that the location of the particular risk was not controlling. *Id.* at 696, 870 P.2d at 263. The court noted that the insured was an Oregon corporation, its principal place of business was in Oregon, and most, if not all, of the insurance policies were issued to it by its Oregon insurance broker. *Id.* at 696–97, 870 P.2d at 263–64. The court noted that although California has a substantial interest in environmental cleanup, "Oregon has a substantial interest in the regulation of insurance contracts and in determining the rights and liabilities of the parties who enter into those contracts in Oregon." *Id.* at 697, 870 P.2d at 264. Thus, given Oregon's "im-

cases extending this holding to the situation where the factual issues are first resolved in the coverage case as opposed to in the underlying claim against the insured. However, I see no reason why the "no estoppel" principle should not apply here. Although the insurer and the insured are on opposite sides of the coverage case, and thus, the "conflict of interest" is obvious and exposed rather than lurking as potential prejudice in a third-party action being defended under a reservation of rights, the concerns underlying the *Birmingham Fire* holding are still present.

Whenever an insurer is defending a third-party action under a reservation of rights, an atypical insurer-insured relationship is created. Under traditional notions of issue preclusion, factual determinations made in the coverage case, were that to be litigated first, could be binding in the third-party action to the disadvantage of the insured. Thus, as seen in the *Montrose* cases and in *North Pacific*, in an effort to protect the insured, these two courts embraced the concept of staying the coverage case until resolution of the underlying issues in the third-party action. When, however, because of the nature of the underlying third-party litigation, it makes more sense from a case management standpoint to litigate the coverage question first, there are strong policy reasons for applying *Birmingham Fire*'s "no estoppel" principle to factual determinations made initially in the coverage case.

For example, in a case where millions of dollars are potentially at stake, where there are many third-party actions, one of which is a class action, and where the potential for settlement of the third-party

actions exists, staying the declaratory relief coverage action could cause undue prejudice to the insurer. The insurer is put in the position of defending huge, time-consuming, and costly cases without actual knowledge of its ultimate responsibility and exposure. This could have a negative impact on the insurer's or an insured's ability to settle a case. When many underlying actions are pending, a stay of the declaratory relief action could last for years.

While staying the declaratory relief action is one method of preserving the insured's rights, it comes at an enormous cost to the insurer and the insured in cases as described in the preceding paragraph. Such prejudice to the insurer was recognized by the *Montrose II* court. Thus, borrowing from *Birmingham Fire*, it makes sense in such cases to litigate the coverage issues first, but to allow the insured, as part of the defense of the third-party action, to relitigate any overlapping factual determinations made in the coverage action. From the standpoint of judicial efficiency, it makes sense to apply *Birmingham Fire*'s holding to situations where the coverage issues are litigated first in addition to those situations where the third-party action is litigated first.

I recognize that, at this point, a California court will preside over most of the siding claims and it is likely that California law will apply in resolving those claims. California ascribes to the traditional elements of the issue preclusion analysis: for issue preclusion to apply, the issue must be identical to that decided in a former proceeding, it must have been actually liti-

portant, fundamental interest in the transaction," the court held that the public policy of Oregon, and thus its law, should prevail. *Id.* Here, although the risk locations are outside of Oregon, Stimson is an Oregon corporation with its principal place of business in Oregon. It negotiated the insurance contracts with Or-

egon brokers. In addition, the product at issue was manufactured in Oregon. Thus, if there were a conflict between Oregon and California law regarding interpretation of insurance contracts, Oregon law would apply to this action.

gated in the former proceeding, it must have been necessarily decided in the former proceeding, the decision in the formal proceeding must have been final and on the merits, and preclusion must be sought against a person who was a party or in privity with a party to the former proceeding. *Lucido v. Superior Court,* 51 Cal.3d 335, 341, 795 P.2d 1223, 1225, 272 Cal.Rptr. 767, 769 (1990). It is possible that a California court could apply this analysis to bind Stimson to any factual determinations made in this coverage action because all of the elements would be satisfied. Two concepts, however, operate to prevent that application.

 . First, under California law, even when all issue preclusion requirements are met, the propriety of preclusion depends upon whether application will further the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Id.* at 342–43, 795 P.2d at 1226–27, 272 Cal.Rptr. at 770–71. Given the reasons for deciding the coverage case first and the competing need to still protect the insured in the underlying third-party actions, it is likely that a California court would not allow application of issue preclusion to Stimson's detriment in the siding claims.

Second, in the spirit of comity, the notion that the courts of one jurisdiction will honor the law of another jurisdiction, a California court could refrain from applying issue preclusion against Stimson in the siding claims.

As noted in *Montrose II,* the prejudice to the insured in situations where there is a duty to defend, but also a concurrent coverage dispute, is not limited to the estoppel effects. There remains the concern that the insured is forced to "fight" on two fronts simultaneously. However, the court can address this prejudice by carefully tailoring both the timing and scope of discovery. Additionally, a protective order should address other prejudices that may arise.

 In summary, Oregon law recognizes that when an insurer is defending an action under a reservation of rights, exposing a conflict of interest between the insurer and its insured, protecting an insured from possible prejudice may require a stay of a concurrent coverage action, or the abandonment of the application of issue preclusion so that no estoppel effect is accorded to the factual determinations made in the third-party action. Because of the need in certain cases, such as here where there are multiple third-party cases and large sums of money involved, to resolve coverage issues expediently, a stay of the coverage case is not an efficient or practical method of protecting the insured or the insurer from the problems inherent in the conflict. One case or the other must necessarily be decided first, and having some additional information about the parties' rights and obligations under the insurance contracts during the resolution of the third-party claims should result in more equitable resolution of those claims. Thus, if the Oregon Supreme Court were presented with the issue, I conclude that it would recognize the propriety of allowing the coverage case to proceed as long as no estoppel effect is accorded to any factual determinations made first in the coverage case. Accordingly, the motion for stay should be denied with the understanding that, while there are some factual issues to be determined in the coverage case which overlap with issues present in the siding claims, no estoppel effect will be accorded to those determinations.

## CONCLUSION

I recommend that Stimson's motions to transfer (# 10) and to stay (# 17) be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due November 2, 2001. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due November 16, 2001, and the review of the Findings and Recommendation will go under advisement on that date.